525 A.2d 1087

Roland H. CRAMPTON

v.

STATE of Maryland.

No. 1284, Sept. Term, 1986.

Court of Special Appeals of Maryland.

June 3, 1987.

376

Laurie I. Mikva, Asst. Public Defender (Alan H. Murrell, Public Defender, on the brief) Baltimore, for appellant.

Ann E. Singleton, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, Andrew L. Sonner, State's Atty. for Montgomery County and Andrew Eisenberg, Asst. State's Atty., on the brief, Rockville), for appellee.

Submitted before GILBERT, C.J., and ALPERT and POLLITT, JJ.

GILBERT, Chief Judge.

Roland H. Crampton was tried and convicted by a jury in the Circuit Court for Montgomery County for driving while intoxicated and failure to reduce speed to avoid an accident. He was sentenced on the driving while intoxicated conviction to ninety days in the Montgomery County Detention Center. All but one weekend was suspended in favor of an eighteen month probation. Further, the court imposed a $100 fine for Crampton's failure to reduce speed to avoid an accident. In this Court, Crampton urges that the trial court's judgments should be reversed because:

1. It erred in admitting the results of the breathalyzer test;

2. The driving while intoxicated charges should have been dismissed because the original charging document was defective; and

3. It erred in permitting the arresting officer to testify about appellant's performance on a series of "field sobriety tests."

The charges against Crampton arose from an automobile accident that occurred on the Cabin John Bridge segment of the Capital Beltway. Around 11 p.m. on May 9, 1985, Sunee Grover was crossing the Cabin John Bridge from Maryland to Virginia. His car broke down, and he came to

a stop in the right lane. He put on his flashing lights and waited for the traffic to pass before exiting his car. While he was waiting for the traffic to clear, Crampton approached at "a good speed" and crashed into his car.

Two Maryland State Police officers, including Trooper Russell, arrived on the scene within a short time after the collision. Russell stated that when he arrived Crampton was seated in his own car. The trooper "smelt the odor of alcoholic beverage emitting from the vehicle," and he asked Crampton to alight from the vehicle. When Crampton alit from the automobile, the trooper asked him to perform some "field sobriety tests." Those tests consisted of reciting the alphabet, standing on one leg, walking heel-to-toe, and touching his nose with his finger. Crampton attempted those exercises but performed poorly. Trooper Russell then arrested Crampton for driving while intoxicated and took him to the local State police barracks where Sergeant Stotlemyer administered a breathalyzer test to appellant. The test showed a 0.19 percent ethyl alcohol by weight in appellant's blood.[1] The trial court ruled that the Courts and Judicial Proceedings Article § 10–306 entitled the State to submit the results of the breathalyzer to the jury without calling Sergeant Stotlemyer.

I

The principal thrust of Crampton's appeal is that the trial judge misapplied Courts and Judicial Proceedings Article, § 10–306. That statute then read:[2]

"(a)(1) Subject to the provisions of paragraph (2) of this section, in any criminal trial in which intoxication due to

---

1. A finding of .08 percent constitutes prima facie evidence of driving under the influence of alcohol and a finding of .13 percent is prima facie evidence of driving while intoxicated. Md.Code (1974, 1984 Repl. Vol.), § 10–307(d) and (e) of the Courts and Judicial Proceedings Article.

2. The General Assembly, effective July 1, 1986, made stylistic modifications to § 10–306. See Laws of 1986, ch. 369. The 1986 amendments are irrelevant to the issue before us in this case.

the consumption of alcohol, or being under the influence of alcohol is an issue, a copy of a report of the results of a chemical test of breath or blood signed by the technician or analyst who performed the test, is admissible as substantive evidence without the presence or testimony of the technician or analyst who performed the test.

(2) To be admissible under paragraph (1) of this subsection, the report must:

(i) Identify the technician or analyst as a 'qualified person,' as defined in Section 10–304 of the Courts and Judicial Proceedings Article;

(ii) State that the test was performed with equipment approved by the toxicologist under the Postmortem Examiners Commission at the direction of a police officer; and

(iii) State that the result of the test is as stated in the report.

(b) Test results which comply with the requirements of subsection (a) of this section are admissible as substantive evidence without the presence or testimony of the technician who administered the test. However, if the State decides to offer the test results without the testimony of the technician, it shall, at least 20 days before trial, notify the defendant or his attorney in writing of its intention and deliver to the defendant or his attorney a copy of the test results to be offered. If the defendant desires the technician to be present and testify at trial, the defendant shall notify the court and the State in writing no later than 10 business days before trial; and if such timely and proper notice is given, the test results are inadmissible without the testimony of the technician. Failure to give timely and proper notice constitutes a waiver of the defendant's right to the presence and testimony of the technician."

The General Assembly in enacting this statute "made clear that alcohol test results are ordinarily reliable and generally admissible as business records." *Moon v. State*, 300 Md. 354, 369, 478 A.2d 695, 703 (1984). Accordingly,

the statute provides that test results may be admitted into evidence without the necessity of calling the technician who administered the test if due notice is given the defendant and there is no timely objection thereto. Although the statute diminishes a defendant's right of confrontation regarding alcohol tests, it does not completely abolish that right. The Court of Appeals in *Moon*, 300 Md. at 370, 478 A.2d at 703, observed:

"It seems to us that § 10–306(b) was designed to subordinate the admissibility of alcohol test results to the timely assertion of the defendant's right of confrontation. The statute requires the tester to be produced, upon the defendant's request, before the evidence may be admitted despite its reliability, and the defendant does not have to proffer what he intends to prove from this witness. In these circumstances, the legislature has safeguarded the defendant's Sixth Amendment right and elevated it over what the statute has declared to be reliable evidence.

In the instant case, defense counsel attempted to preserve appellant's right of confrontation by filing a notice requesting the presence and testimony of the technician. When the State contended that the notice was untimely and hence invalid, the trial court conducted a pretrial hearing to receive evidence on the matter.

At that hearing, defense counsel explained that a breath test was administered to Crampton and that the test showed an alcohol level of 0.19. Notice of the test results and of the State's intention to submit these results without the testimony of the technician was served on appellant at the time of his arrest. Counsel further explained that originally trial was scheduled to be held in the district court on January 16, 1986. Crampton's counsel further stated that in November 1985 he made a proper request for the State to produce the technician who administered the breath test. According to defense counsel, the trial in the district court was postponed. Crampton's attorney said, during argument in the circuit court, that the reason for the postponement was that the technician was not present. On

March 19, 1986, appellant demanded a jury trial, and the matter was transferred to the Montgomery County Circuit Court.

At the time of the hearing in the circuit court, that court's record did not contain any indication that a request for the presence of a technician had, in fact, been made in the district court. When the case was first called in the circuit court on April 30, 1986, the State requested a continuance; and the matter was rescheduled for July 9, 1986, but subsequently postponed until July 10, 1986, because of Crampton's motion to dismiss. That motion was based on duplicity and a failure to charge an offense.

The record does not reflect any activity on the part of either the State or Crampton during the period April 30, 1986, through June 30, 1986. On July 1, 1986, Crampton's counsel once again demanded that the State produce, at trial, the technician who administered the breathalyzer test to Crampton. Admittedly, that demand was not made more than ten days prior to the then scheduled trial date.

Immediately before trial on the merits, the judge heard testimony relative to Crampton's demand that the technician who administered the breathalyzer test be present. Following that hearing, the judge found that prior to the scheduled district court trial date the State forwarded to Crampton proper notice of its intent to submit the report without the technician. The judge declined, however, to make a specific finding as to whether Crampton had made a proper demand for the presence of the technician in the district court. The judge did, nevertheless, assume that a proper notice had been given. The judge then considered Courts Article § 10–306 and ruled that the statute:

1. Requires the State to give only one notice and that once a notice is given in the district court, it applies to any circuit court proceeding that may follow, but that

2. The statute requires that when a case is transferred from the district court to the circuit court, a defendant must file a new demand for the technician and

that the new demand must be made at least ten days before the scheduled trial date.

Since the demand for the presence of the technician was filed in the circuit court less than ten days before the scheduled trial date, the trial judge concluded that Crampton's demand was invalid. Consequently, the judge ruled that the State was entitled to have the breath test report received into evidence without the necessity of presenting the technician who administered the test.

Crampton advances three reasons why he thinks that that ruling was incorrect. First, he avers that the trial court misinterpreted Courts Articles § 10–306(b) when it ruled that the statute requires the defense to renew its § 10–306(b) notice if a case is transferred from the district court to the circuit court. To support this contention, Crampton points out that the statute requires only that notice be given "no later than ten days before trial." Appellant maintains that he gave that notice in November 1985, a period of time well before the trial scheduled for July 9, 1986.

Second, Crampton asserts that, if the statute necessitates the defense to renew its notice when a case is transferred from one court to another, it also mandates the State to renew its notice. Since the State failed to make a timely renewal of its notice after the case was transferred to the circuit court, Crampton argues that the State was not entitled to submit the report in the absence of the technician.

Third, appellant argues that, even if the trial judge interpreted the statute correctly, the judge, nevertheless, abused his discretion by ruling as he did because his ruling denied appellant the right of confrontation.

■ We agree with appellant's first reason. There is nothing in the statute that dictates that a defendant renew his § 10–306(b)(2) demand. All that the statute commands is that notice be given "in writing no later than 10 days before trial." Although there may be practical reasons why

a renewal of the notice would be helpful, the statute does not mandate a renewal.

The trial court, as we have said, refrained from making a specific finding that, at the district court level, the defendant demanded the presence of the technician who administered the test. The judge said, however, that with respect to the filing of the demand the defendant was "allowed ... the benefit of the doubt." We think that in making that statement, the trial court effectively found that the subsection 10–306(b)(2) notice had been forwarded to the State while the case was still in the district court.[3]

The demand made on the State while the case was pending in the district court satisfied Courts Article § 10–306 and required the State to produce the technician at trial. The circuit court erred in permitting the result of the report to be admitted into evidence without requiring the presence

---

**3.** The appellant offered into evidence a copy of a "Line" which he said was filed in the district court. The "Line" contained a certification of service signed by defense counsel. There was an ample basis for the trial court's allowing Crampton the "benefit of the doubt." The demand read:

"LINE
The Defendant, Roland Henry Crampton, by and through his/her attorney, Mary Buonanno, Esquire, desires that the technician who administrered [sic] any breathalizer [sic] or blood alcohol level test, be present and testify at the trial of the Defendant pursuant to the Annotated Code of Maryland, Courts and Judicial Proceedings, § 10–306. The Defendant also desires the presence of any and all persons necessary to prove any otehr [sic] evidentiary matter necessary to the prosecution, including chain of custody. Further the Defendant demands the ampules used as the reactive agent in any breathalizer [sic] test administered to the Defendant be produced pursuant to *Brady v. Maryland*, 373 v. 83 [sic], 83 S.Ct. 1194, 10 LEd.[2d] 215.

/ s / _____
Mary Buonanno, Esquire
Assistant Public Defender
CERTIFICATE OF SERVICE
I HEREBY CERTIFY that a copy of this Line was hand-delivered to the State's Attorney's Office, 50 Courthouse Square, Rockville, Maryland 20850 on this 22nd day of November, 1985.

/ s / _____
Mary Buonanno, Esquire"

of the technician who administered the test. That error requires reversal of the conviction for driving while intoxicated.

## II

■ The charges against Crampton were commenced via a citation for "driving a motor vehicle while intoxicated *or* under the influence of alcohol." (Emphasis supplied). Alleging that the charges were duplicitous, Crampton moved to dismiss them. He asserted that the citation charged him in the disjunctive with the separate offenses of driving while intoxicated *or* driving while under the influence of alcohol.[4]

The trial court refused to dismiss the charges; instead, it allowed the State to amend the citation to contain the single charge of driving while intoxicated.

Crampton argues that the amendment of the charge was improper because it was a substantive change which could only have been made with his consent. Since he did not consent, he maintains the court erred in not dismissing the charges.

We addressed a similar issue in *Thompson v. State,* 26 Md.App. 442, 338 A.2d 411 (1975), *reversed on other grounds,* 278 Md. 41, 359 A.2d 203 (1976). There Thompson was charged by citation with "driving with ability impaired or intoxicated in violation of § 11–902 [now § 21–902] of the Transportation Article." Thompson, like Crampton, contended that the traffic citation charging him with "driving while ability impaired or intoxicated" recited two separate potential charges in a single count and was "clearly duplici-

---

4. Section 21–902 of the Md.Code Transportation Article lists four distinct offenses:
 a) driving while intoxicated;
 b) driving while under the influence of alcohol;
 c) driving while under the influence of drugs or drugs and alcohol; and
 d) driving while under the influence of a controlled dangerous substance.

tious." *Thompson* 26 Md.App. at 449, 338 A.2d 411. We said that, although charging two substantive crimes in one count is impermissible where the offenses grew out of different transactions and involved different intents, it is nevertheless permitted when the count charges two or more offenses involving the same intent. *Thompson* acknowledged that, generally, when a statute creates an offense and specifies several different acts, transactions, means or intents by which the offense may be committed, a charging document alleging those different offenses must do so conjunctively and not disjunctively. *State v. Beers*, 21 Md.App. 39, 318 A.2d 825 (1974). *Thompson* noted, however, that "this rule can be changed by statute ... as was done ... [when the Legislature enacted Transportation Article] § 16–104." *Thompson*, 26 Md.App. at 449–50, 338 A.2d 411. Transportation Article § 16–104, applied in *Thompson*, has been replaced by § 26–405. It provides that if a person is charged with a violation of Trans. Art. § 21–901 or Trans. Art. § 21–902 the court may find that person guilty of a lesser included offense. *Thompson* said that requiring a defendant to stand trial on the driving while impaired charge presented no due process violation. Explaining the reason for the disjunctive/conjunctive rule as twofold, we opined:

> "The first is that the defendant is entitled to be informed with certainty of the offense with which he is charged; the second is that he should be enabled to show, in the event of a subsequent prosecution, that he has previously been convicted or acquitted of the same offense."

*Thompson*, 26 Md.App. at 450, 338 A.2d 411, citing *Bonneville v. State*, 206 Md. 302, 310–11, 111 A.2d 669, 672 (1955).

The *Thompson* Court found no fair notice problem insofar as charging the defendant with a violation of § 21–902 for driving while intoxicated but allowing him to be convicted of driving under the influence of alcohol. The Court reasoned that the offenses differ only in the grade of proof required to support a conviction. 26 Md.App. at 450.

*Thompson* implied that dropping the greater charge and proceeding in the lesser was not, in the traditional sense, a substantive change to the charging document.

As in *Thompson,* appellant was fully aware that he was charged with violation of both subsections of § 21–902. He cannot successfully assert that he was hampered in preparing to defend against the greater offense because the lesser offense was dropped. Both charges appeared on the initial charging document possessed by Crampton. He had notice of the driving while intoxicated charge.

The case at bar differs factually from *Thompson* in that "driving while intoxicated" is not a lesser included offense of "driving while under the influence." We are unable to perceive how Crampton was hampered in his defense simply because a lesser included charge was dropped. As a practical matter, irrespective of the inclusion *vel non* of the lesser charge, Crampton still had to prepare his defense to the greater offense. We think the trial court did not err in denying Crampton's motion to dismiss.

### III

Over Crampton's objection, Officer Russell was permitted to testify concerning Crampton's performance of certain "simple field sobriety tests." Crampton claims that the trial court erred in admitting the testimony because the proper foundation for the tests under the *Frye-Reed* [5] standard was not laid. He further asserts that the testimony was not shown to be otherwise reliable, and that it was ultimately more prejudicial than probative.

The testimony Crampton rigorously assails was elicited on direct examination of Trooper Russell. The trooper testified that he asked Crampton to stand on one leg, recite the alphabet, and perform a heel-to-toe test. An objection to that testimony was made on the ground that a proper

---

5. *Frye v. United States,* 293 F. 1013 (D.C. Cir.1923); *Reed v. State,* 283 Md. 374, 391 A.2d 364 (1978).

foundation had not been laid for it. Crampton's counsel contended that there was nothing in the record to show that the test was scientifically reliable or that it was generally accepted in the scientific community as indicative of a person's being either under the influence of alcohol or intoxicated. The trooper was permitted to relate to the jury that Crampton was unable to perform the field sobriety tests and was, therefore, arrested.

 One seeking to introduce expert opinion based on a new method of scientific investigation must first establish that the new technique has gained the general acceptance of the relevant scientific community. *Reed v. State*, 283 Md. 374, 389, 391 A.2d 364, 372 (1978). The Court of Appeals said in *Reed* that *"Frye [v. United States*, 293 F. 1013 (D.C. Cir.1923) ] was deliberately intended to interpose a substantial obstacle to the unrestrained admission of evidence based upon new scientific principles...."* *Reed*, 283 Md. at 386, 391 A.2d at 370. The *Reed* Court cited with approval *State v. Cary*, 56 N.J. 16, 264 A.2d 209 (1970), which stated:

> "All scientific aids and devices go through an experimental and testing stage, and during these stages there may be considerable scientific controversy. During this period of controversy ... the danger is that a trial may actually result in the trial of the technique rather than the trial of the issues involved in the case."

*Reed*, 283 Md. at 389, 391 A.2d at 372.

The *Frye-Reed* standard has been applied to various newly developed methods of scientific discovery:

> "paraffin test, *Brooke v. People*, ... [139 Colo. 388, 339 P.2d 993 (1959) ]; medical testimony regarding the cause of birth defects, *Puhl v. Milwaukee Automobile Ins. Co.*, ... [8 Wis.2d 343, 99 N.W.2d 163 (1959) ]; breath analysis devices designed to test for intoxication, *People v. Morse*, ... [325 Mich. 270, 38 N.W.2d 322 (1949); truth serum injections, *State v. Linn*, ... 93 Idaho 430, 462 P.2d 729 (1969) ]; blood tests, *People v. Alston*, ... [79 Misc.2d

1077, 362 N.Y.S.2d 356 (1974); *State v. Stout*, ... [478 S.W.2d 368 (Mo.1972)]; gunshot residue tests, *State v. Smith*, ... [50 Ohio App.2d 183, 362 N.E.2d 1239 (1976)]; Nalline tests for detection of narcotics use, *People v. Williams*, ... [164 Cal.App.2d Supp. 858, 331 P.2d 251 (1958)]; ink identification tests, *United States v. Bruno*, ... [333 F.Supp. 570 (E.D.Pa.1971)]; and hypnotism, *People v. Busch*, ... [56 Cal.2d 868, 16 Cal.Rptr. 898, 366 P.2d 314 (1961)].

This Court in *Shanks v. State*, ... [185 Md. 437, 440, 45 A.2d 85 (1945)], although not citing the *Frye* case itself, recognized the standard of general scientific acceptance in connection with the admissibility of blood test evidence."

The *Frye-Reed* test is not, however, applicable to the case *sub judice*. Unlike the techniques employed in the above-cited cases, field sobriety tests are essentially personal observations of a police officer which determine a suspect's balance and ability to speak with recollection.

There is nothing "new" or perhaps even "scientific" about the exercises that an officer requests a suspect to perform. Those sobriety tests have been approved by the National Highway Traffic Safety Administration and are simply guidelines for police officers to utilize in order to observe more precisely a suspect's coordination.

■ It requires no particular scientific skill or training for a police officer, or any other competent person, to ascertain whether someone performing simple tasks is to a degree affected by alcohol. The field sobriety tests are designed to reveal objective information about a driver's coordination. *See People v. Ramirez*, 199 Colo. 367, 609 P.2d 616, 620 (1980). The *Frye-Reed* test does not apply to those field sobriety tests because the latter are essentially empirical observations, involving no controversial, new, or "scientific" technique. Their use is guided by practical experience, not theory.

The trial judge did not err in admitting the trooper's testimony relative to his observations of Crampton's field sobriety test.

CONVICTION FOR DRIVING WHILE INTOXICATED REVERSED. CONVICTION FOR FAILURE TO REDUCE SPEED TO AVOID AN ACCIDENT AFFIRMED. CASE REMANDED FOR FURTHER PROCEEDINGS.

ONE–HALF OF THE COSTS TO BE PAID BY APPELLANT AND ONE–HALF TO BE PAID BY MONTGOMERY COUNTY.