527 A.2d 56

**Henry Royal SWINSON**

v.

**STATE of Maryland.**

No. 1589, Sept. Term, 1986.

Court of Special Appeals of Maryland.

June 16, 1987.

Elise Davis, Chestertown, for appellant.

Jillyn K. Schulze, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and J. Frederick Price, State's Atty. for Kent County on the brief), Chestertown, for appellee.

Argued before WILNER, WEANT and ALPERT, JJ.

WILNER, Judge.

Appellant was convicted in the Circuit Court for Kent County of driving under the influence of alcohol, in violation of Md.Code Ann.Transp. art., § 21–902(b), and failing to keep to the right of center. The maximum penalty for a

first conviction under § 21–902(b) is a fine of $500 and incarceration for *two* months. Transp. art., § 27–101(c)(22). Because appellant had previously, in 1981, been convicted of driving while intoxicated, however, he was treated as a subsequent offender and given an enhanced punishment pursuant to § 27–101(f).[1] He was fined $300 plus costs and sentenced to *six* months in prison, of which four months was suspended in favor of five years probation.

Appellant does not challenge his convictions. His sole complaint is that the enhanced sentence for the § 21–902(b) conviction was the product of prosecutorial vindictiveness, that it is therefore Constitutionally impermissible, and that he is entitled to be sentenced as though he were a first offender. We do not agree.

In addition to the minor traffic violation, appellant was charged generally with a violation of § 21–902, which would include both driving while intoxicated (§ 21–902(a)) and driving under the influence of alcohol (§ 21–902(b)). The offenses occurred on June 8, 1986; trial was scheduled in the District Court for Kent County for September 2, 1986. Although the State was aware of appellant's earlier conviction on or shortly after June 8, it did not inform him prior to the scheduled trial date that it intended to seek an enhanced punishment. As a result, had trial actually occurred on the scheduled date, the District Court would have been precluded by Md.Rule 4–245(b) from imposing the enhanced sentence otherwise authorized by § 27–101(f).[2]

---

**1.** Section 27–101(f) provides, in relevant part, that a person convicted of "a second or subsequent violation of ... § 21–902(b) of this article ('Driving while under the influence of alcohol') is subject to a fine of not more than $500 or imprisonment for not more than 1 year or both." Appellant's earlier conviction, as noted, was under § 21–902(a) rather than § 21–902(b). He does not raise that as an issue in this appeal, however, and we therefore do not consider it. *See* § 26–405; *Thompson v. State,* 26 Md.App. 442, 338 A.2d 411 *rev'd on other grounds* 278 Md. 41, 359 A.2d 203 (1976); *Crampton v. State,* 71 Md.App. 375, 525 A.2d 1087 (1987).

**2.** Md.Rule 4–245(b) provides:

Appellant appeared for trial on September 2, but, when his counsel "walked in District Court that morning and found the Circuit Court Judge from Caroline County sitting there,"[3] she prayed a jury trial on behalf of her client. As a result, the case was transferred to the Circuit Court for Kent County. On October 6, 1986, the State gave notice to appellant that it intended to prosecute him as a subsequent offender by reason of his 1981 conviction. No immediate response was made to that notice, and, on November 25, 1986, appellant was tried in the Circuit Court; he was acquitted of driving while intoxicated but, as noted, convicted of driving under the influence of alcohol.

On December 10, 1986, appellant moved to strike the State's October 6 notice on the ground that its action "was unethical and gives the strong inference of impropriety...." He recited the procedural history of the case and asserted that on or about November 17 the prosecutor had offered to withdraw the notice if appellant would plead guilty to driving under the influence. He claimed further that the State's Attorney had a policy of not prosecuting § 21–902 violations under the subsequent offender law, that defense counsel had at least five other clients in 1986 who could have been tried in the District Court for Kent County as subsequent offenders but were not, and that "only the Defendant herein was tried as one and then only after he had elected a jury trial."

At the hearing on the motion, counsel made clear that her argument was of Constitutional dimension, proceeding from

---

"When the law permits but does not mandate additional penalties because of a specified previous conviction, the court shall not sentence the defendant as a subsequent offender unless the State's Attorney serves notice of the alleged prior conviction on the defendant or counsel before the acceptance of a plea of guilty or nolo contendere or at least 15 days before trial in circuit court or five days before trial in District Court, whichever is earlier."

**3.** Pursuant to Md. Const., art. IV, § 18(b), the Chief Judge of the Court of Appeals has assigned judges of the Circuit Courts in the Second Judicial Circuit to sit as judges of the District Court within that Circuit.

principles announced by the Supreme Court in *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), and *Blackledge v. Perry,* 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974). She alleged that the October 6 notice was in retaliation for her client's prayer for a jury trial and, in that regard, asked the State to "file an affidavit with respect to the number of people in the year 1986 that could have been tried as subsequent offenders, and the number who actually were."

In response to counsel's charge, the prosecutor denied any vindictiveness. He acknowledged that he does not generally seek enhanced punishment in the District Court "for the reason that quite often the State—or at least the State's Attorney's office doesn't have actual notice of the subsequent offender ... within the period authorized by the Rules to give notice to the defendant prior to trial." He explained:

"In other words, with the computer system it is not unusual for the State to get notice, or have notice that a trial will be scheduled in about eight days and quite often the trooper hasn't sent us the certified record indicating any subsequent offender. So they are not pursued, and simply the cases are tried as they come in. This is a different situation though. There was more time—additional time for investigation and so-forth, and in Circuit Court the rules are followed more closely than they are in the District Court, and in this case the State did nothing other than abide by the Rules and notify the Defendant that he could be sentenced as a subsequent offender should he be convicted. And that's where we are at this point."

After some further discussion, the court concluded that the prosecutor had discretion in the matter and declined either to require the statistics requested by counsel (which the prosecutor said were unavailable in any event) or to find vindictiveness. Hence this appeal.

We begin by observing that appellant presented no direct evidence of any actual vindictiveness or retaliatory motive

on the part of the prosecutor in seeking the enhanced punishment. What he sought really to establish was an inferred or presumed vindictiveness—a chilling appearance of vindictiveness—arising from the acknowledged facts that the prosecutor generally does not seek enhanced punishment in the District Court and that he sought that punishment in this case only after appellant exercised his Constitutional right to a jury trial.

There have been a number of cases, including *North Carolina v. Pearce* and *Blackledge v. Perry*, in which the Supreme Court has addressed the issue of a court imposing or a prosecutor seeking an enhanced punishment following the exercise of some procedural right by a defendant. The underlying principle involved is that, "while an individual certainly may be penalized for violating the law, he just as certainly may not be punished for exercising a protected statutory or constitutional right." *United States v. Goodwin*, 457 U.S. 368, 372, 102 S.Ct. 2485, 2488, 73 L.Ed.2d 74 (1982).

The initial focus of the Court was on the trial/retrial setting—whether, and under what circumstances, it was permissible for a court, upon retrial of a defendant who had previously been tried, convicted, and sentenced but who became entitled to a retrial, to impose a harsher sentence than had been imposed at the first trial. *See North Carolina v. Pearce, supra,* 395 U.S. 711, 89 S.Ct. 2072; *Colten v. Kentucky,* 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972); *Chaffin v. Stynchcombe,* 412 U.S. 17, 93 S.Ct. 1977, 36 L.Ed.2d 714 (1973). The concern was whether the ability of the court to impose a more substantial penalty the second time might create such an appearance of vindictiveness as to deter defendants from exercising rights accorded to them by law. In the classic trial/successful appeal/retrial setting, the Court found that there was that appearance, and so it limited the trial court's ability to impose a harsher sentence after retrial. *North Carolina v. Pearce, supra.* In the two-tiered trial setting—trial *de novo* in a court of general trial jurisdiction following a trial and conviction in an "inferior" court of limited trial jurisdic-

tion—and in the case where the second sentence was imposed by a jury rather than by the judge, the Court decided that the prophylactic constraints of *Pearce* were unnecessary. *Colton v. Kentucky, Chaffin v. Stynchcombe,* both *supra.*

In later cases, the Supreme Court shifted its attention from *courts imposing* increased sentences after retrial to *prosecutors seeking* increased sentences following the exercise of some procedural right or option by the defendant. *See Blackledge v. Perry, supra,* 417 U.S. 21, 94 S.Ct. at 2098; *Bordenkircher v. Hayes,* 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978); *United States v. Goodwin, supra,* 457 U.S. 368, 102 S.Ct. 2485.

*Blackledge,* though focusing on the action of the prosecutor rather than the judge, still dealt with the trial/retrial setting. The defendant was charged in the North Carolina counterpart to our District Court with misdemeanor assault. He was tried, convicted, given a six-month sentence, and then exercised his right to elect a *de novo* trial in the counterpart to our Circuit Court. Prior to trial in that court, the prosecutor obtained an indictment, based on the same conduct giving rise to the misdemeanor charge, charging the defendant with felony assault. He was ultimately convicted on the felony charge and sentenced to five to seven years.

"The question," said the Court, 417 U.S. at 27, 94 S.Ct. at 2102, "is whether the opportunities for vindictiveness in this situation are such as to impel the conclusion that due process of law requires a rule analogous to that of the *Pearce* case." The Court answered in the affirmative observing, 417 U.S. at 27–28, 94 S.Ct. at 2102:

"A prosecutor clearly has a considerable stake in discouraging convicted misdemeanants from appealing and thus obtaining a trial *de novo* in the Superior Court, since such an appeal will clearly require increased expenditures of prosecutorial resources before the defendant's conviction becomes final, and may even result in a formerly convicted defendant's going free. And, if the prosecutor

has the means readily at hand to discourage such appeals—by 'upping the ante' through a felony indictment whenever a convicted misdemeanant pursues his statutory appellate remedy—the State can insure that only the most hardy defendants will brave the hazards of a *de novo* trial."

In *Bordenkircher* and *Goodwin,* the Court dealt, for the first time, with the *pre* -trial, rather than *post* -trial, actions of the prosecutor. In *Bordenkircher,* the prosecutor carried through on a threat to bring additional charges against the defendant who, during plea negotiations, refused his entreaty to plead guilty to the initial charge. *Goodwin* involved a situation very close to that now before us; charged with a misdemeanor, the defendant elected a jury trial, whereupon the prosecutor obtained a felony indictment.

The *Goodwin* Court, in particular, carefully distinguished the pre-trial and post-trial situations, finding no occasion to apply the *Pearce-Blackledge* constraints to the former. At 381 of 457 U.S., 102 S.Ct. at 2492, the Court stated:

"There is good reason to be cautious before adopting an inflexible presumption of prosecutorial vindictiveness in a pretrial setting. In the course of preparing a case for trial, the prosecutor may uncover additional information that suggests a basis for further prosecution or he simply may come to realize that information possessed by the State has a broader significance. At this stage of the proceedings, the prosecutor's assessment of the proper extent of prosecution may not have crystallized. In contrast, once a trial begins—and certainly by the time a conviction has been obtained—it is much more likely that the State has discovered and assessed all of the information against an accused and has made a determination, on the basis of that information, of the extent to which he should be prosecuted. Thus, a change in the charging decision made after an initial trial is completed is much more likely to be improperly motivated than is a pretrial decision.

In addition, a defendant before trial is expected to invoke procedural rights that inevitably impose some 'burden' on the prosecutor. Defense counsel routinely file pre-trial motions to suppress evidence; to challange the sufficiency and form of an indictment; to plead an affirmative defense; to request psychiatric services; to obtain access to government files; *to be tried by jury. It is unrealistic to assume that a prosecutor's probable response to such motions is to seek to penalize and to deter.* The invocation of procedural rights is an integral part of the adversary process in which our criminal justice system operates."

(Emphasis added.)

The Court recognized that, even in the pre-trial setting, there was some "opportunity for vindictiveness" but concluded that "a mere opportunity for vindictiveness is insufficient to justify the imposition of a prophylactic rule." *Id.,* 384, 102 S.Ct. at 2494. It left open the possibility, not shown in that case or in this one, that the defendant might prove objectively an actual motivation by the prosecutor to punish him for exercising a protected right.

In *State v. Adams,* 293 Md. 665, 447 A.2d 833 (1982), the Court of Appeals reviewed the *Goodwin* Court's analysis, noting, at 673, 447 A.2d 833:

"Additionally, the Court emphasized that a special presumption on the defendant's behalf *was not created simply by invocation of the right to jury trial.* The Court explained that unlike *Blackledge,* no duplicative expenditures were incurred as a result of the defendant's request, and as compared to *Pearce,* no judge was asked to do over what he thought he already had done correctly. Thus, the deep seated institutional bias against retrying previously decided issues, which might have created a favorable presumption for the defendant, was not offended."

(Emphasis added.)

*Goodwin,* we think, is dispositive. The explanation given by the prosecutor for not routinely seeking enhanced pun-

ishment in the District Court was uncontroverted by appellant and, whether good policy or bad, is not implausible. He did nothing more here than to avail himself of an opportunity opened up by appellant's decision to remove the case to the Circuit Court. We find no improper vindictiveness, either actual or presumed, and therefore no reversible error.[4]

JUDGMENTS AFFIRMED; APPELLANT TO PAY THE COSTS.

---

**4.** We also find no error in the court's refusal to require the prosecutor to produce the data sought by defense counsel. For one thing, as noted, he said, without contradiction, that the data was unavailable; for another, even if it showed that enhanced punishment was not sought in the District Court, as asserted by counsel, it would not, under *Goodwin,* establish vindictiveness in this case.