In the Matter of I.R., Appellant.

No. 08–03–00130–CV.

Court of Appeals of Texas, El Paso.

Dec. 4, 2003.

M. Clara Hernandez, El Paso County Public Defender, El Paso, for Appellant.

Jose R. Rodriguez, County Attorney, El Paso, for Appellee.

Before Panel No. 3 BARAJAS, C.J., LARSEN, and CHEW, JJ.

### OPINION

SUSAN LARSEN, Justice.

I.R. was adjudicated delinquent for committing an assault and was placed on probation until his eighteenth birthday. In his sole issue on appeal, he asserts that his trial counsel was ineffective. We reverse and remand.

### Factual and Procedural Background

The State's first witness at the adjudication hearing was the fifteen-year-old complainant, Jessie Braun. He testified that on August 4, 2002, he and his older sister were walking down an El Paso street when I.R. and another boy rode up behind them on bikes and began throwing rocks. One of the rocks hit Jessie on the back of his neck. Jessie identified I.R. as the person who threw the rock that hit him. He knew I.R. because they had previously gone to the same school. According to Jessie, I.R. had "beat [him] up" when they were in the sixth grade. Jessie also accused I.R. of saying "sexual things" to his little sister.

On cross-examination, defense counsel established that Jessie was certain about the date of the assault:

Q: And this is on August the 4th, right?

A: Yes.

Q: You sure?

A: Yes, sir.

Q: I mean, you sure on August the 4th that [I.R.] was here in town?

A: Yes.

Q: Absolutely, right?

A: Yes.

Counsel also established that Jessie was bigger than I.R. at the time of the hearing. Counsel then engaged in a line of questioning that was apparently intended to make Jessie seem infantile:

Q: You're coming into court saying this little kid here is picking on you?

A: Because I've been taught not to hit him. .... Go along, let them hit you, and go tell mom.

Q: Did you tell your mommy that this happened?

A: Yes.

. . .

Q: So you went home. You went running home and you told mom and she called the police?

A: Yes, and I was on an ambulance, thank you.

. . .

Q: But you did tell your mommy what happened here, right?

A: Yes.

Q: And you're glad you did. And next time you have a problem with one of the kids on the street in the playground you're going to call mommy again.

At this point, the prosecutor objected on the ground that counsel was badgering the witness. The objection was sustained. Counsel then concluded by stating: "Pass the witness. Go call mommy." This comment prompted the judge to say "Please."

Jessie's older sister, Denise, corroborated Jessie's account of the assault. She also testified that she remembered I.R. because when he and Jessie went to school together they would "always fight."

Patrol Officer Michelle Ojeda testified next. She stated that when she arrived on the scene, she observed an injury on the back of Jessie's neck. Ojeda called for medical assistance because Jessie's mother told her that Jessie "had a history of medical conditions." On cross-examination, defense counsel attempted to determine whether Jessie's history of medical conditions included mental problems, but Ojeda did not have any information about that issue.

The State rested at the conclusion of Ojeda's testimony. When asked if he had any witnesses, defense counsel responded, "Well, if Jessie's mom's here I would like to call her. I want to find out whether he has a history of mental problems." Jessie's mother testified that he is on medication for attention deficit hyperactivity disorder.

Defense counsel then called I.R. to the witness stand. I.R. testified that he was fourteen-years-old. He denied that he was involved in the assault. He claimed that on August 4, 2002, he was in Elephant Butte, New Mexico, with his next-door neighbor Roger Hayden and Hayden's son Jacob. At the conclusion of the adjudication hearing, the trial judge found that I.R. engaged in delinquent conduct as alleged in the State's petition.

Thereafter, defense counsel filed a motion for new trial based upon two grounds: (1) "the interest of justice" and (2) "Juvenile's chief defense witness, Roger Hayden was unavailable and unable to attend Court. He will testify as to the actual innocence of the juvenile." An affidavit by Hayden was attached to the motion. The affidavit states that I.R. was with Hayden and his family in Elephant Butte on August 4, 2002.

At the commencement of the hearing on the motion for new trial, defense counsel announced, "My client's mother informed me that Mr. Hayden may have been a material witness. I thought he was going to show on the day of trial, but he didn't, so we ended up issuing a subpoena for him today." Hayden testified that he has known I.R. for all of I.R.'s life and that I.R. does yard work for him. He further testified that from Friday, August 2, 2002, at approximately 4 p.m., to August 4, 2002, at approximately 5:30 p.m., I.R. was with him and his family at Elephant Butte Lake. According to Hayden, there was "no way" that I.R. could have been in El Paso before 5 p.m. on August 4, 2002.[1]

On cross-examination, Hayden testified that I.R.'s mother knew that I.R. was with him on the day in question. He also testified that he was not subpoenaed for the adjudication hearing. The prosecutor did not attempt to impeach Hayden's testimony regarding I.R.'s whereabouts on August 4, 2002.

The trial judge asked Hayden several questions to determine why he did not

---

1. Although the time of the assault was not discussed at the adjudication hearing or the new-trial hearing, the record reflects that the assault occurred at approximately 9:50 a.m.

appear for the adjudication hearing. Hayden testified that he "did not know anything about this [case] until they asked me if I could go see their attorney. . . ." The judge asked, "The mother didn't tell you anything?" and Hayden responded:

> I didn't hear anything at all until I guess it was after the trial and they came back and [I.R.] had said that he was—that he had had this problem on this date and I told him, "How could you have that? You were with us at the lake." And that's when I found out about it.

The defense's only other witness was I.R.'s mother. Defense counsel asked her if she told Hayden about the adjudication hearing. She responded that she was not able to notify him because she does not speak English.

In her closing argument, the prosecutor argued, "[M]aybe the mother should have made more efforts—and I can understand [defense counsel's] position in this case— but, quite frankly, the witness was never notified properly to be here on that day." The judge took the matter under advisement and later signed an order denying the motion for new trial.

At the disposition hearing, defense counsel moved to withdraw as I.R.'s attorney "because of certain issues, . . . it would be more appropriate that a different lawyer do the appeal." He also requested that the judge "appoint counsel to pursue an appeal so they may test the Motion for New Trial in addition to any claim of ineffect [sic]." The judge granted the motion to withdraw and appointed new appellate counsel.

### The Law Governing Ineffective Assistance of Counsel Claims

A two-pronged test governs our review of ineffective assistance of counsel claims. *Thompson v. State,* 9 S.W.3d 808, 812 (Tex.Crim.App.1999). First, we must determine whether counsel's performance was deficient. *Id.* To establish that counsel's performance was deficient, the defendant must show that the performance fell below an objective standard of reasonableness. *Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984); *Thompson,* 9 S.W.3d at 812. Second, we must determine whether counsel's deficient performance prejudiced the defendant. *Thompson,* 9 S.W.3d at 812. To establish prejudice, the defendant must show that there is a reasonable probability that the result of the proceedings would have been different but for counsel's deficient performance. *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068; *Thompson,* 9 S.W.3d at 812. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068; *Thompson,* 9 S.W.3d at 812.

Our review is highly deferential and presumes that counsel's actions fell within a wide range of reasonable professional assistance. *Mallett v. State,* 65 S.W.3d 59, 63 (Tex.Crim.App.2001); *Thompson,* 9 S.W.3d at 813. The defendant bears the burden of proving by a preponderance of the evidence that counsel was ineffective. *Thompson,* 9 S.W.3d at 813. We look to the totality of the representation and the particular circumstances of each case in evaluating the effectiveness of counsel. *Id.* In some cases, a single egregious error may constitute ineffective assistance. *Id.*

An allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Id.* For example, the failure to call a witness does not amount to ineffective assistance unless the record shows that the witness was avail-

able and would have provided testimony beneficial to the defendant. *Butler v. State,* 716 S.W.2d 48, 55 (Tex.Crim.App. 1986). Moreover, when the record is silent as to the motivations underlying counsel's decisions, the defendant usually cannot overcome the strong presumption that counsel's conduct was reasonable. *Mallett,* 65 S.W.3d at 63.

### Application of the Law to the Facts of This Case

*The First Prong: Deficient Performance*

■■■ I.R. argues that his trial counsel was ineffective in failing to subpoena Hayden to testify at the adjudication hearing. Hayden's testimony at the new-trial hearing establishes that he was available and that his testimony would have been beneficial. *See Butler,* 716 S.W.2d at 55. The record also establishes that the failure to call Hayden as a witness was not a strategic or tactical decision by counsel. At the commencement of the new-trial hearing, counsel admitted, "My client's mother informed me that Mr. Hayden may have been a material witness. I thought he was going to show on the day of trial, but he didn't, so we ended up issuing a subpoena for him today." Apparently recognizing his mistake, counsel moved to withdraw so I.R. could pursue a claim of "ineffect" on appeal.

■■■ An attorney has a professional duty to present all available testimony in support of the client's defense. *See State v. Thomas,* 768 S.W.2d 335, 336 (Tex.App.-Houston [14th Dist.] 1989, no pet.). To fulfill this duty, counsel should arrange for the issuance of subpoenas on individuals whom counsel intends to call as witnesses at trial. In determining whether the defense was entitled to a continuance because of a missing witness, one appellate court stated:

> Because a missing witness is a risk inherent in almost every case, the party seeking to present the witness must exercise reasonable diligence to protect against the possibility that a witness will not appear as promised. Taking appropriate measures (i.e., arranging for the timely issuance and service of a subpoena to compel the witness's appearance at trial) is especially critical when the witness is material to the case. Failure to take the necessary steps to secure the attendance of a key witness demonstrates a lack of reasonable diligence.

*Rodriguez v. State,* 21 S.W.3d 562, 566 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd). Moreover, a witness's promise to appear for trial is no excuse for failing to subpoena the witness. *Drew v. State,* 743 S.W.2d 207, 228 n. 17 (Tex.Crim.App.1987). We conclude that counsel was deficient in failing to arrange for the issuance of a subpoena on Hayden.

■■■ Furthermore, an attorney has a duty to make an independent investigation of the facts supporting the defense. *Butler,* 716 S.W.2d at 54. This includes the responsibility to seek out and interview potential witnesses. *Id.; Thomas,* 768 S.W.2d at 336–37. Defense counsel acknowledged at the new-trial hearing that I.R.'s mother told him about Hayden. But Hayden's testimony at that hearing reveals that he did not meet defense counsel until after the adjudication hearing. We conclude that counsel was deficient in failing to seek out and interview potential witnesses.[2]

---

2. I.R. also argues that counsel's questioning of Jessie's mother and Officer Ojeda was deficient. This argument is based on information in the pre-disposition report that was prepared after the adjudication hearing. The report states that Jessie's mother initially told Officer Ojeda that her children had been assaulted "with several huge rocks thrown by

### The Second Prong: Prejudice

The failure to interview or call a witness satisfies the prejudice prong if it results in the failure to advance a viable defense. *See Butler*, 716 S.W.2d at 56; *Shelton v. State*, 841 S.W.2d 526, 526 (Tex. App.-Fort Worth 1992, no pet.); *Thomas*, 768 S.W.2d at 336–37. In *Shelton*, the State's only evidence was the testimony of the sixteen-year-old complaining witness. *See* 841 S.W.2d at 526. At the first trial, defense counsel presented the alibi testimony of the defendant's great niece, whose testimony "so completely contradicted that of the complainant that it would have been impossible for the jury to have believed both witnesses." *Id.* The defendant was convicted, but the conviction was overturned on appeal because of an erroneous venue ruling. *Id.* The attorney who represented the defendant at the first trial also represented him at the second trial. *Id.* At the second trial, however, counsel failed to contact the defendant's great niece to testify. *Id.* The appellate court reversed the conviction again, concluding that counsel's failure to secure the great niece's testimony robbed the defendant of his only viable defense. *Id.*

In *Thomas*, the defendant was convicted of aggravated sexual assault. *See* 768 S.W.2d at 336. He testified at trial, relying on the defense of consent. *See id.* He claimed that the complainant offered him sex in exchange for cocaine. *Id.* At a hearing on a motion for new trial, six witnesses testified that the defendant and the complainant had an ongoing sexual relationship, and one witness testified that the complainant had previously traded sex for drugs. *Id.* at 337. The appellate court affirmed the trial court's decision to grant a new trial based on ineffective assistance of counsel. *Id.* The appellate court held that the evidence at the new-trial hearing established that the defense of consent was not fully advanced because of counsel's failure to interview and call witnesses. *Id.*

The facts of this case are analogous to those of *Shelton* and *Thomas*. The only evidence implicating I.R. was the testimony of the teenage victim and his teenage sister. There was also evidence of bad blood between the victim and I.R., thus giving Jessie and Denise motivation to accuse I.R. I.R.'s testimony raised the defense of alibi, but there was no evidence to corroborate this testimony. Hayden's testimony would not only have corroborated the alibi, but would have completely contradicted the testimony of Jessie and Denise, such that it would have been impossible for the fact finder to have believed both him and Jessie and Denise.

The State suggests that Hayden's testimony would have been merely cumulative of I.R.'s testimony. We disagree. Hayden was relatively disinterested; there was no other disinterested-witness testimony regarding whether I.R. was the culprit. *See Thomas*, 768 S.W.2d at 336 (upholding trial court's finding of ineffective assistance because witnesses who would have corroborated the defendant's testimony on the defense of consent were not called as witnesses); *see also State v. Zapata*, No. 04–00–00238–CR, 2001 WL 80466, at * 2 (Tex.App.-San Antonio Jan.

---

*unknown suspects"* (emphasis added). The report also states that I.R. was taken into custody at school. Because the assault occurred on a Sunday, it can be inferred that I.R. was not taken into custody on the day of the assault. I.R. argues that this information from the pre-disposition report supports his claim that he was not the culprit and that he was not in town when the assault occurred. While it seems likely that a reasonable investigation would have uncovered this information, the record does not disclose counsel's reasons for failing to elicit the information. Therefore, we do not base our determination of deficient performance on this argument. *See Mallett*, 65 S.W.3d at 63.

31, 2001, no pet.) (not designated for publication) (holding that disinterested-witness testimony that would have supported alibi defense was not cumulative).

The State also argues that I.R. gave two accounts of his whereabouts on the day of the assault and that Hayden's testimony would have only corroborated one of those accounts. According to the State, I.R. first testified that he was at Walmart when the assault occurred. We believe the State has misread the record.

Defense counsel asked I.R. whether Jessie's mother ever confronted him. After I.R. answered affirmatively, the following colloquy occurred:

Q: Well, what happened? . . . .

A: She was just like telling me that why did I fight with her son.

Q: All right. This was about a week later; right?

A: Yes. Like when they said that this happened that I threw a rock at him, I was coming down from Walmart—

Q: Let's talk about August 4, 2002. Were you here in El Paso that day?

I.R. responded that he was at Elephant Butte on that day. Thus, I.R. testified that he was returning from Walmart when Jessie's mother accused him of fighting with her son, but he was at Elephant Butte when the assault occurred.

Finally, the State argues that Hayden's testimony at the new-trial hearing negated any prejudice that might have resulted from counsel's failure to subpoena him for the adjudication hearing. The State notes that the same judge who presided at the new-trial hearing was the fact finder at the adjudication hearing. The State suggests that the judge weighed Hayden's testimony at the new-trial hearing against the testimony at the adjudication hearing and denied the motion for new trial because he found Hayden's testimony not credible. This argument is not supported by the law or the record.

In *Armstrong v. Manzo,* a father was not given notice of proceedings to adopt his child until after the adoption decree was entered. 380 U.S. 545, 546–48, 85 S.Ct. 1187, 1188–89, 14 L.Ed.2d 62 (1965). Upon learning of the adoption, the father promptly filed a motion for new trial. *Id.* at 548, 85 S.Ct. at 1189. The trial court denied the motion. *Id.* at 549, 85 S.Ct. at 1190. This Court affirmed, holding that the failure to notify the father of the adoption proceedings was cured by the hearing on the motion for new trial, when the father had an opportunity to present evidence as to why the adoption should not occur. *Id.* at 549–51, 85 S.Ct. at 1190–91. The U.S. Supreme Court reversed. The Court noted that if the father had been given proper notice, the parties seeking the adoption would have had the burden of proving grounds for the adoption. *Id.* at 551, 85 S.Ct. at 1191. But at the hearing on the motion for new trial, the father had the burden of disproving grounds for the adoption. *Id.* at 551, 85 S.Ct. at 1191. Therefore, the Court held that the father could be accorded due process only by granting his motion for new trial, so that the trial court could "consider the case anew." According to the Court, "Only that would have wiped the slate clean [and][o]nly that would have restored the [father] to the position he would have occupied had due process of law been accorded to him in the first place." *Id.* at 552, 85 S.Ct. at 1191.

Similarly, in this case, the State had the burden at the adjudication hearing to prove I.R.'s delinquency beyond a reasonable doubt. *See* Tex. Fam.Code Ann. § 54.03(f) (Vernon Supp.2004); *see also Hunt v. State,* 779 S.W.2d 926, 927 (Tex. App.-Corpus Christi 1989, pet. ref'd) (hold-

ing that the State is required to disprove a defense beyond a reasonable doubt if there is some evidence supporting the defense). At the new-trial hearing, however, I.R. had the burden to prove that he was entitled to a new trial. *See Patrick v. State,* 906 S.W.2d 481, 498 (Tex.Crim.App.1995); *Godoy v. State,* 122 S.W.3d 315, 318 (Tex. App.-Houston [1st Dist.] 2003, no pet. h.).

■ I.R.'s motion for new trial alleged that Hayden was unavailable at the time of the adjudication hearing and that he would testify to I.R.'s actual innocence. To be entitled to a new trial on this ground, I.R. had to prove: (1) he did not know of Hayden's potential testimony at the time of the adjudication hearing; (2) his failure to discover the potential testimony was not due to a want of due diligence; (3) the testimony would probably bring about a different result in another trial; and (4) the testimony is admissible and not merely cumulative, corroborative, collateral, or impeaching. *See State v. Balderas,* 915 S.W.2d 913, 916 (Tex.App.-Houston [1st Dist.] 1996, no pet.). Both the prosecutor and the trial judge focused on the first two requirements at the new-trial hearing. During cross-examination of Hayden, the prosecutor uncovered that I.R.'s mother knew that I.R. was with Hayden on the day in question and that Hayden was not subpoenaed for the adjudication hearing. Likewise, the judge asked Hayden several questions to determine why he did not appear for the adjudication hearing.

Based on *Armstrong* and the record in this case, we cannot conclude that the failure of counsel to secure Hayden's presence at the adjudication hearing was cured by Hayden's testimony at the new-trial hearing. Instead, we conclude that there is a reasonable probability—*i.e.,* a probability sufficient to undermine our confidence in the outcome—that the result of the adjudi-

cation proceeding would have been different if counsel had subpoenaed Hayden.

## Conclusion

For the reasons stated herein, we sustain I.R.'s sole issue on appeal. The trial court's judgment is reversed, and this cause is remanded for a new trial.