# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00624-CR

**Blake Taylor, Appellant**

v.

**The State of Texas, Appellee**

### FROM COUNTY COURT AT LAW NO. 2 OF BELL COUNTY
### NO. 2C02-04982, HONORABLE JOHN BARINA, JR., JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Blake Taylor appeals her conviction for operating a motor vehicle while intoxicated, a class B misdemeanor. *See* Tex. Pen. Code Ann. § 49.04 (West 2003).[1] A jury found appellant guilty and the trial court assessed punishment at ninety days in the county jail and a fine of $1,000. The imposition of sentence was suspended and appellant was placed on community supervision (probation) for one year subject to certain conditions.

On original submission, we sustained appellant's first point of error that the trial court erred in refusing to hear the motion for new trial on the basis that the court lacked jurisdiction. We abated the appeal and remanded the cause to the trial court to afford appellant a hearing on her timely filed motion for new trial. *See Taylor v. State*, 163 S.W.3d 277 (Tex. App.—Austin 2005, pet.

---

[1] The word "driving" is no longer found in the statute, but the offense is still commonly known as "DWI."

dism'd). The hearing was conducted, the motion was overruled, and the supplemental record has been returned to this Court.

## Points of Error

The first point of error having been disposed of, we examine the remaining contentions. Second and third, appellant claims that the trial court erred in admitting testimony concerning the field sobriety tests of horizontal gaze nystagmus (HGN) and the one-leg stand. Fourth, appellant urges that the trial court erred in excluding evidence of appellant's medical condition at the time of her arrest. In four additional points, appellant challenges the legal and factual sufficiency of the evidence to support the conviction. In a supplemental point of error, appellant argues that the trial court abused its discretion in overruling the motion for new trial after remand. We will affirm the judgment of conviction.

## Factual Background

At approximately 12:30 p.m. on March 21, 2002, Killeen Police Officer Charles Clayton was dispatched to a non-injury accident at the intersection of U.S. Highway 195 and Jasper Avenue. Ramona Cofield testified that she was driving her young daughter to a baby sitter in a friend's compact car. She stopped at the flashing red light at the said intersection, and then proceeded to make a turn when her vehicle was struck by a Jeep Cherokee vehicle driven by appellant. Ms. Cofield related that appellant came up to her and stated, "Red means stop?" Cofield could smell alcohol on appellant's breath and observed that appellant's eyes were "glossy." Cofield

2

was concerned that she might be arrested because she had no driver's license but denied that she told appellant not to call the police. Apparently, appellant's daughter, who was with her, called "911."

Officer Clayton arrived on the scene a few minutes after receiving the dispatch. He found the flashing red light traffic signal to be operating properly. Immediately upon his arrival, appellant approached Officer Clayton and accused Cofield of running the red light and causing the accident. Appellant told the officer that she suspected Cofield of being intoxicated or under the influence of drugs. At this point, Clayton observed that appellant's speech was rambling, her eyes were red and glassy, and that she was "swaying a tad bit." Upon examination, the officer found that Cofield displayed no such symptoms.

Officer Samuel Ellis, Jr., arrived to assist Officer Clayton and was asked to perform a horizontal gaze nystagmus test (HGN) on appellant. When Ellis approached appellant he could smell the odor of alcohol on her person. When he asked about stopping at the flashing red light signal, she responded, "What flashing red light?" When Ellis administered the HGN test he detected four clues indicating intoxication, but appellant quit tracking his pen with her eyes, then turned her head, thus preventing Ellis from completing the test. Ellis noticed that appellant was slightly swaying during the interrupted test. In his opinion, appellant was intoxicated, having lost the normal use of her physical and mental faculties.

Officer Ellis, a certified accident reconstructionist, testified that from the damage to the vehicles it appeared that appellant failed to stop for the red light and struck the Cofield vehicle as it was turning. He acknowledged on cross-examination that without a witness, he could not be

3

sure how the accident occurred, and there was a possibility that one of the parties failed to yield the right of way instead of running a red light.

Officer Clayton had appellant perform several field sobriety tests at the scene. He administered another HGN test, and the one-leg stand test. He testified that based upon his observations at the scene, it was his opinion that appellant had lost the normal use of her mental and physical faculties.

Appellant was arrested and taken to the Killeen city jail. The booking officer, Maurice Jones, testified that appellant's eyes were glassy and bloodshot. He believed that she was intoxicated. Appellant was uncooperative. She refused to take a breath test, and refused to give her fingerprints or any of the information needed for booking. Appellant was videotaped at the jail, repeatedly demanding to see her lawyer and refusing to take a breath test. The redacted videotape, marked as State's Exhibit #1A, was introduced into evidence. After appellant talked to an attorney on the telephone, she asked for a blood test or even a breath test. None were given.

Appellant testified that on May 20, 2002, she was at a club known "Oz" from 8 p.m. until almost midnight, and that she had only one drink called a "Long Beach" with one shot of rum. Appellant left to drive to IHOP restaurant for breakfast. Her daughter was with her and appellant was driving the daughter's car, a Jeep. About 12:20 a.m. at the intersection in question, appellant stopped at the blinking red light when a red vehicle failed to stop for the red light, "fishtailed somewhat" and collided with appellant's vehicle. By agreement, the parties drove their vehicles into a nearby parking lot. Appellant testified that she informed Cofield that Cofield had run a red light;

4

that Cofield responded that she needed to get out of there, that "I'm going to jail." Appellant's daughter called "911," while Cofield continued to plead with appellant not to call the police.

Appellant reported that her daughter was holding the child with Cofield to comfort the child. When Officer Clayton arrived, appellant gave him her driver's license and got the car insurance papers out of her daughter's glove compartment. Appellant reported that she told Clayton that she suspected that the child could have been kidnapped, the child was in pajamas, was upset and clinging to her daughter and not Cofield, who was frantic to leave the scene.

Appellant related that various tests were conducted at the scene. Officer Ellis asked to look at her eyes. She was facing Jasper Avenue at the time and telling Ellis her concern for the child when a test was performed. The second test on the eyes was conducted by Officer Clayton. Appellant testified that she was on a sidewalk and faced a different direction while Clayton shined a big light on her face. Appellant related that she performed a one-leg stand test and followed instructions. When Clayton asked if she wanted to repeat the test, she felt that she had an option and declined to take the test again.

After being arrested and placed in a patrol car, appellant said that she began sweating and had difficulty breathing. At the jail she was asked to repeat the earlier tests, but she asked for an attorney to which she thought she was entitled. She refused the tests until she talked to her attorney. Appellant reported that Officer Clayton shut off the video he had been taking and sent her to the booking area.

Appellant explained why she did not take a breath test. She said that she was stunned and was not drunk, and that she wanted to talk to an attorney as she did not know how accurate the

test was and if it could be trusted. After being allowed to use a telephone, she called her husband and then an attorney. Thereafter, appellant asked for a breath test but was told that the certified officer had gone back on patrol. She then requested a blood test but none was administered.

Appellant called Terry Walden, an expert in field sobriety testing, as a witness. He listened to the testimony of Officers Clayton and Ellis, and concluded that the results of their field sobriety testing was invalid. In great detail, Walden pointed out how in his opinion the HGN and one-leg stand tests were improperly conducted. Appellant and Walden were the only defense witnesses.

## Discussion

### Admission of HGN Test

In point of error two, appellant claims that the "trial court erred by admitting testimony regarding the horizontal gaze nystagmus test." The stated point of error could relate to the admission of such evidence before the jury at the trial on the merits. There was no trial objection made to preserve error. *See* Tex. R. App. P. 33.1. From her brief, it is obvious that appellant is relying on the overruling of her second motion to suppress evidence to preserve error. *See Waller v. State*, 581 S.W.2d 483, 485 (Tex. Crim. App. 1979); *Roberts v. State*, 545 S.W.2d 157, 158 (Tex. Crim. App. 1977); *Riojas v. State*, 530 S.W.2d 298, 301 (Tex. Crim. App. 1975); *Jackson v. State*, 649 S.W.2d 317, 319 (Tex. App.—Amarillo 1983, no pet.) (to preserve error on appeal, defendant need not renew during trial on merits overruled objection made in pretrial motion to suppress). Appellant cites and relies solely upon evidence adduced at the hearing on the second motion to suppress to support his contention. Under these circumstances, the general rule is that only evidence

6

from the hearing on the motion to suppress is considered on appeal. *See Peddicord v. State*, 942 S.W.2d 100, 108 (Tex. App.—Amarillo 1997, no pet.);[2] *see also Rachel v. State*, 917 S.W.2d 799, 809 (Tex. Crim. App. 1996).

A pretrial motion to suppress evidence, *see* Tex. Code Crim. Proc. Ann. art. 28.01(6) (West 1989), is nothing more than a specialized objection to the admissibility of evidence. *Galetz v. State*, 617 S.W.2d 949, 952 n.10 (Tex. Crim. App. 1981); *Manzi v. State*, 56 S.W.3d 710, 715-16 n.2 (Tex. App.—Houston [14th Dist.] 2001), *aff'd*, 88 S.W.3d 240 (Tex. Crim. App. 2002); *Carroll v. State*, 911 S.W.2d 216, 218 (Tex. App.—Austin 1992, no pet.); *Mayfield v. State*, 800 S.W.2d 932, 935 (Tex. App.—San Antonio 1990, no pet.). The suppression motion must meet the requirements of an objection including specificity. *See* Tex. R. App. P. 33.1; *Mayfield v. State*, 800 S.W.2d at 935.

We examine the second motion to suppress evidence to determine the objection upon which appellant relies. Appellant alleged in the motion that "the officer" (unidentified) had administered certain scientific field sobriety tests to appellant in such a way that the scientific theory underlying these tests could not have been properly applied on the particular occasion, citing *Kelly v. State*, 824 S.W.2d 568 (Tex. Crim. App. 1992). It was further alleged "the officer" had testified at the hearing on the first motion to suppress and would testify at trial.

---

[2] Neither party claims that the issue was consenually relitigated during the trial on the merits so as to bring into play relevant trial testimony for consideration. *Peddicord v. State*, 942 S.W.2d 100, 108 (Tex. App.—Amarillo 1997, no pet.) (citing *Hardesty v. State*, 667 S.W.2d 130, 133 n.6 (Tex. Crim. App. 1984)).

*Kelly* held that under Rule 702 of the Rules of Evidence, the proponent of novel scientific evidence must prove to the trial court in the jury's absence, by clear and convincing evidence, that the proffered evidence is relevant and reliable. To be considered reliable the evidence must satisfy three criteria: (1) the underlying scientific theory must be valid; (2) the technique applying the theory must be valid; and (3) the technique must have been properly applied on the occasion in question. *Kelly*, 824 S.W.2d at 573. Under the third criteria the qualifications of the experts testifying must be established. *Id*.[3] This was the basis of the second motion to suppress. There was no Rule 403 objection included in the suppression motion or raised at the hearing. *See* Tex. R. Evid. 403.

---

[3] Rule 702 of the Texas Rules of Evidence relating to testimony by experts provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

Tex. R. Evid. 702.

> Before admitting expert testimony, a trial court must be satisfied that (1) the witness qualifies as an expert; (2) the subject matter of the testimony is an appropriate one for expert testimony; and (3) the expert testimony is reliable and relevant.

2 Steven Goode, Olin Guy Wellborn, III, and M. Michael Sharlot, Texas Practice: Guide to the Texas Rules of Evidence § 7.02.1 (3d ed. 2002). The question of whether a witness offered as an expert possesses the required qualifications rests largely in the trial court's discretion. Absent an abuse of discretion, the trial court's decision to admit or exclude testimony will not be disturbed on appeal. The party proffering the expert witness bears the burden of showing that the witness is qualified on the specific matter in question. *See* Tex. R. Evid. 702; *Wyatt v. State*, 23 S.W.3d 18, 27 (Tex. Crim. App. 2000); *Gullatt v. State*, 74 S.W.3d 880, 882 (Tex. App.—Waco 2002, no pet.).

On September 8, 2003, prior to trial, appellant was accorded a hearing on the second motion to suppress at which "the officer," Charles Clayton, Officer Samuel Ellis, and appellant's expert, Troy Walden, testified. The trial court overruled the motion as to the HGN tests and the one-leg stand test, but granted the motion as to the walk and turn test for a practical reason—the test had been conducted on a sloping and uneven surface.

Assuming that the overruling of the second motion to suppress evidence is the basis for point of error two, appellant's contention is that the trial court erred in overruling the motion and failing to suppress the testimony as to both HGN tests. In reviewing the trial court's ruling on a motion to suppress, we afford almost total deference to the trial court's determination of historical facts supported by the record, but review *de novo* the court's application of the law to the facts. *State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). This is the "bifurcated" standard of *Guzman*. *See Burke v. State*, 27 S.W.3d 651, 654 (Tex. App.—Waco 2000, pet. ref'd). If the trial court has not made explicit findings, we assume that the court made findings that are supported by the record and buttress its conclusions. *Carmouche v. State*, 10 S.W.3d 323, 327-28 (Tex. Crim. App. 2000). The party proffering the expert witness bears the burden of showing that the witness is qualified on the specific matter in question. *Wyatt v. State*, 23 S.W.3d 18, 27 (Tex. Crim. App. 2000); *Gullatt v. State*, 74 S.W.3d 880, 882 (Tex. App.—Waco 2002, no pet.).

The subject matter of the expert testimony at issue is the application of the field sobriety test of horizontal gaze nystagmus (HGN). Nystagmus is an involuntary rapid oscillation of the eyes in a horizontal, vertical or rotary direction. *Emerson v. State*, 880 S.W.2d 759, 765 (Tex.

9

Crim. App. 1994) (citing The Merck Manual of Diagnosis and Therapy 1429 (1992)); *see also*

*Quinney v. State*, 99 S.W.3d 853, 857 (Tex. App.—Houston [14th Dist.] 2003, no pet.). HGN refers

to the inability of the eyes to smoothly follow an object moving horizontally across the field of

vision, particularly when the object is held at an angle of forty-five degrees or more to the side.

*Webster v. State*, 26 S.W.3d 717, 719 n.1 (Tex. App.—Waco, 2000, pet. ref'd). Consumption of

alcohol exaggerates nystagmus to the degree that it can be recognized by the naked eye. *Emerson*,

880 S.W.2d at 766. Nystagmus may be caused by factors other than alcohol such as narcotic use,

neurological disorders, or brain damage. *Id*.

The HGN test has been held to be scientific evidence subject to the three-pronged

criteria of *Kelly*, 824 S.W.2d at 573-74, and Rule 702 before admission into evidence. *Emerson*, 880

S.W.2d at 763. In *Emerson*, the Texas Court of Criminal Appeals examined the underlying scientific

theory of HGN testing and found the theory and the technique employed in the testing to be reliable

for the purposes of Rule 702 governing the admissibility of expert testimony. *Emerson*, 880 S.W.2d

at 768. The court, finding both the theory and its technique to be valid, took judicial notice of the

theory and its technique. *Id.* at 769. By making this determination, the court relieved the State of

the burden of presenting evidence to satisfy the first two prongs of *Kelly's* regarding expert HGN

testimony. *See Quinney*, 99 S.W.2d at 857; *Gullatt*, 74 S.W.3d at 883-84. The *Emerson* decision

left the State with the burden of showing only that the HGN technique was properly applied on the

occasion in question and the expert witness was qualified. While Rule 702 does not prescribe the

burden of persuasion, the Court of Criminal Appeals has determined that the burden is by clear and

convincing evidence rather than by a preponderance of the evidence. *Kelly*, 824 S.W.2d at 573.

*Qualifications of Experts*

Appellant's initial argument is that the trial court erred in permitting Officers Clayton and Ellis to testify as to the HGN tests performed because they were not qualified as expert witnesses.

> For testimony concerning a defendant's performance on the HGN test to be admissible it must be shown that the witness testifying is a qualified expert on the HGN test, specifically concerning its administration and technique. In the case of a police officer or other law enforcement official, this requirement will be satisfied by proof that the officer has received practitioner certification by the State of Texas to administer the HGN.

*Emerson*, 880 S.W.2d at 769; *Webster*, 26 S.W.3d at 721.

The first motion to suppress evidence was based on a claim that there was no probable cause for the warrantless arrest of appellant. It was heard on June 11, 2003, and overruled. At the hearing, Officer Clayton testified that he was "certified" to perform the HGN test, but he had not received his practitioner's license but "was working on it." Officer Ellis simply testified that he was "certified" and no further questions were asked. Appellant relies heavily on appeal on Officer Clayton's remarks. The State points out that appellant did not object to the qualifications of Officer Ellis or Clayton as expert witnesses at either the first or second suppression hearing or at the trial on the merits. *See* Tex. R. App. P. 33.1(a). The State urges that nothing is presented for review as to witness qualification.

Appellant bases her point of error two on the overruling of the second motion to suppress claiming that the administration of all the field sobriety tests did not comply with the three-

pronged criteria of *Kelly v. State*, 824 S.W.2d at 573. It would seem that this specialized objection within the second suppression motion might have preserved error unless it was waived.

The second motion to suppress evidence was heard prior to trial on September 8, 2003. At the hearing, appellant asked the trial court to take into consideration all of the testimony from the first hearing. Without objection, the trial court agreed to do so. The prosecutor then asked that Officer Clayton be considered as an expert witness as he had been so qualified by the trial court at the first hearing. When the trial court explained this request to appellant's trial counsel, he responded, "Okay." At the second hearing there was no objection to the officers's qualifications. On cross-examination, Officer Clayton testified that he was initially certified to administer the HGN test some ten years before when he was with the Copperas Cove Police Department and that in 2000 or 2001 he took a refresher course after joining the Killeen Police Department. Before Officer Ellis testified, the trial court, upon the request of the State, took "judicial notice" of the officer's qualifications as an expert witness "from the last hearing." Officer Ellis simply testified that he had been "certified" since 1996.

It is not unusual or improper for a party to agree or stipulate to the qualifications of another party's expert witness. *In re J.S.C.* held that the qualification of a State's psychiatrist as an expert witness was sufficiently established by a stipulation even though the trial court was not informed of the qualifications. 812 S.W.2d 92, 94-95 (Tex. App.—San Antonio 1991, no writ). In *Guerrero v. Smith*, 864 S.W.2d 797, 801-02 (Tex. App.—Houston [14th Dist.] 1993, no writ), the defendant stipulated at the beginning of the plaintiff's witness's testimony that the witness was a

12

qualified expert. It was held that he could not complain on appeal about the witness's qualifications, even though subsequent to the stipulation his trial objection was overruled.

In the instant case, given the circumstances, the State did not further develop the qualifications of Officers Clayton and Ellis as expert witnesses in light of appellant's agreement and concession, lack of objection and waivers. Appellant is not in a position to complain on appeal about the absence of sufficient evidence concerning the qualifications of the officers as witness. Still further, the trial court did not abuse its discretion in finding Officers Clayton and Ellis qualified as experts to testify as to the administration and technique of the HGN test. In *Smith v. State*, 65 S.W.3d 332, 344 (Tex. App.—Waco 2001, no pet.), like the instant case, the record showed the officer was "certified" by the State but did not make clear that he had received a "practitioner's certificate" as discussed in *Emerson v. State*, 880 S.W.2d 759, 769 (Tex. Crim. App. 1994). *Smith* held that *Emerson* does not require that an expert witness must be certified by the State of Texas before his testimony on the subject of the HGN test is admissible. *Smith*, 65 S.W.3d at 344 (citing *Herr v. State*, 921 S.W.2d 498, 502 (Tex. App.—Fort Worth 1996, no pet.).

Moreover, other courts of appeals have permitted officer testimony on HGN tests without regard to certification. *See Singleton v. State*, 91 S.W.3d 342, 348 (Tex. App.—Texarkana 2002, no pet.) (concluding trial court could determine officer was expert from his knowledge, skill, experience, and training despite evidence that officer was not certified); *Lewis v. State*, 933 S.W.2d 172, 181 (Tex. App.—Corpus Christi 1996, pet. ref'd) (concluding no error in allowing officer to testify regarding HGN test based on statement from officer that he was a qualified expert in administering the test).

13

At the trial on the merits, Officer Ellis testified that he was a senior police officer with the Killeen Police Department with eleven and a half years of service, was a certified accident reconstructionist, a trained intoxilyzer operator, had over 2,000 hours of training including field sobriety tests school, and had been "certified" in 1996 on HGN testing through a course offered by "the Texas A&M system." Officer Clayton testified at trial that he had thirteen and a half years of service as a law enforcement officer, had extensive training in family violence issues, arrest, search, and seizure and had attended HGN and DWI detection schools. He stated he was initially "certified" on HGN testing when he was with the Copperas Cove Police Department and had a refresher course with the Killeen Police Department and both schools were sponsored by Texas A&M University and the National Highway Traffic Safety Administration. After the first suppression hearing, Officer Clayton's remarks about the practitioner's license was never raised again. Given the circumstance, the trial court did not abuse its discretion in overruling the second motion to suppress because of a lack of the qualifications of Officers Clayton and Ellis.[4]

---

[4] Although not discussed by either party, it has been held that the rules of evidence, with the exception of privilege, do not apply to suppression hearings involving the determination of preliminary questions concerning the admission of evidence. *Granados v. State*, 85 S.W.3d 217, 227 (Tex. Crim. App. 2002); *Turner v. State*, 132 S.W.3d 504, 508 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd). In his dissent in *Granados*, 85 S.W.3d at 240, Judge Myers stated in part:

> Under the majority's reading of the law, there is now nothing to prevent a trial court from deciding the merits of a suppression motion by relying exclusively on an unsworn police report or lab report. *No longer must an expert witness at a suppression hearing be qualified.* Tex. R. Evid. 702 (emphasis added).

The Texas Court of Criminal Appeals may want to revisit the *Granados* decision so the salutary purpose behind the statutory provision for a motion to suppress evidence (Tex. Code Crim. Proc. art. 28.01(6) (West 2005) is not hamstrung by a decision interpreting rules of evidence adopted by the

*Officer Clayton and the HGN Test*

Included in her point of error two, appellant claims that Officer Clayton misapplied the HGN test that he administered to appellant. All record references cited in support of her claim are from the court reporter's record at the hearing on the second suppression motion. Officer Clayton testified at this hearing as to his administration of the HGN test. Thereafter, appellant qualified Troy Walden as a HGN test expert. Walden, a former peace officer, qualified HGN test instructor, and former state coordinator for the standardized field sobriety testing program at the Texas Engineering Extension Service with the Law Enforcement Security Division of the Texas A&M University System, was permitted to remain in the courtroom during the hearing and listen to Officer Clayton's testimony. He had read the record of the first suppression hearing, the accident report, and other matters relating to the instant DWI charge. Walden's testimony was highly critical of Officer Clayton's handling of the HGN test. At the conclusion of the hearing, the trial court overruled the second motion to suppress.

Appellant relies heavily upon Walden's testimony in her claim that Clayton misapplied the HGN test. Clayton testified that he held his pen as a stimulus 12 to 18 inches in front of appellant's eyes as required by his training. Walden contended that the National Highway Traffic Safety Administration (NHTSA) manual requires the stimulus to be held 12 to 15 inches in front and

Court under limited authority. *See* Tex. Gov't Code Ann. § 22.109 (West 2004). If the trial court, within its discretion, declines to hear the pretrial motion to suppress evidence, a defendant must raise a trial objection to the admissibility of the evidence, which is decided at trial by the rules of evidence. If the trial court hears the pretrial suppression motion on the same issue, the rules of evidence do not apply under *Granados*.

above the eyes. However, Officer Clayton testified that he actually held the pen closer to 12 inches in performing the test. In checking for the lack of smooth pursuit, Officer Clayton testified that he took the stimulus out to each side at maximum deviation and brought it back without stopping the stimulus. When asked how long it took to move the stimulus from the center point to maximum deviation, the officer estimated four to five seconds. Walden testified that based on NHTSA protocols there was a large time discrepancy in the check for smooth pursuit. Walden testified that it should take two seconds to go to the outside and two seconds to go back to the center. Officer Clayton was testifying about tracking the smooth pursuit in both of appellant's eyes. In the context it is not clear whether Clayton's time estimation related to moving the stimulus from the center to the maximum deviation in one eye or whether it included a return to the center. The State argues that the NHTSA manual (without giving the date or which edition) uses the word "approximately" with regard to the time estimation. Even if the time recommended by Walden and the NHTSA manual is accurate, the difference between this time and that estimated by Officer Clayton appears negligible. *See Compton v. State*, 120 S.W.3d 375, 378 (Tex. App.—Texarkana 2003, pet. ref'd). There is nothing to show that the difference in time would result in a finding of smooth pursuit of appellant's eyes rather than a lack of smooth pursuit. Walden said that Officer Clayton made only one pass of each eye in checking for smooth pursuit of the eyes when there should have been two passes of each eye. No edition of a NHTSA manual was introduced. The trial court did not take "judicial notice" of any such manual regardless of date. We do not conclude that Officer Clayton's testimony as to lack of smooth pursuit should be the basis for excluding the HGN test.

16

Next, appellant claims the HGN test by Officer Clayton should have been excluded as evidence because there was an invalid observation for nystagmus at the maximum deviation point in each eye. Officer Clayton testified that he observed nystagmus in each eye when he held the pen (stimulus) at the maximum deviation point in each eye. Walden claimed that the NHTSA protocal was not followed on this element of the HGN test because the stimulus was not held in place for four rather than three seconds. Otherwise, Walden testified it cannot be determined whether appellant's nystagmus was any indication of intoxication. It was nighttime. Officer Clayton was using a pen as a stimulus and holding a flashlight. It was not shown that he had a stop watch. His testimony was only an estimation. Here again, the difference in the time frame given the circumstances is negligible.

Still further, appellant argues that the HGN test by Officer Clayton should have been excluded on the basis that there was an invalid observation of nystagmus prior to the 45 degree point. This stage of the HGN test is used to observe at what point the eye first begins to exhibit nystagmus. If nystagmus occurs at a point prior to the stimulus being at a 45-degree angle from the eye, this is an indication of impairment. *Emerson*, 880 S.W.2d at 768. Appellant relies upon Officer Clayton's testimony at the second suppression hearing developed on cross-examination by appellant's trial counsel and later countered by the defense expert. The testimony was rather meager. Officer Clayton testified that he moved the stimulus from the center to the 45 degree point in "smooth progression;" that it took three seconds to reach the 45 degree point and three seconds to return to center. He started the test with appellant's right eye. It appears obvious that at some point the officer saw nystagmus but he did not expressly say so. Walden, the defense expert, stated that

17

Officer Clayton should have started with the left eye and should have stopped when he first observed nystagmus prior to the 45 degree point, but Clayton didn't stop so there could not be a valid "clue" from the test as administered by the officer. Here again, there was a discrepancy in time. Walden stated that it should take four seconds to reach the 45 degree point.

We observe that at the suppression hearing Officer Clayton never once stated that, based on the HGN test he administered, appellant was intoxicated. The trial court was the trier of fact and the judge of the credibility of the witnesses. While Walden testified to his understanding of the NHTSA manual, no edition of it was introduced nor did the trial court take judicial notice of the manual.

We conclude that the trial court, as trier of fact, did not err in overruling the suppression motion based on Officer Clayton's administration of the HGN test.

*Officer Ellis and the HGN test*

We turn next to appellant's contention within the second point of error that Officer Ellis did not properly apply the HGN test technique. Appellant cites and relies solely upon Officer Ellis's testimony at the two suppression hearings. Officer Ellis testified that he performed the first two phases of the HGN test by determining (1) a lack of smooth pursuit of appellant's eyes, and (2) by observing a distinct nystagmus at maximum deviation in each eye. He was unable to complete the test because appellant kept moving her head and failing to keep her eyes on the stimulus as instructed. Officer Ellis acknowledged that appellant was slightly swaying during the test. He did mention that he got four out of six clues before the test was terminated. At the suppression hearings, Officer Ellis did not testify that, based on the incomplete HGN test, appellant was intoxicated at the

18

time, nor was he asked any such questions. There was no attempt at the suppression hearings to quantify appellant's exact BAC based on the incomplete test.

Troy Waldon, appellant's HGN expert, was critical of Officer Ellis's HGN test because appellant was swaying and because it was not completed. Walden concluded that the test was not in compliance with the NHTSA standards.

What was overlooked was that Officer Ellis did not express the opinion that appellant was intoxicated based on the test. He testified to his attempt to administer the test and his observations about appellant's actions which prevented the test's completion. Generally, the lay opinion testimony of a police officer is admissible as to the officer's observations and to prove a defendant's intoxication. *Emerson*, 880 S.W.2d at 763; *Vaughn v. State*, 493 S.W.2d 524, 525 (Tex. Crim. App. 1972). Here, Officer Ellis offered no opinion testimony at the suppression hearings.

We conclude that the trial court did not abuse its discretion in admitting Officer Ellis's testimony at the second suppression hearing.[5] Appellant's second point of error is overruled.

**The One-Leg Stand Test**

In point of error three, appellant contends that the "trial court erred by admitting testimony of appellant's performance during the one-leg stand test." In support of his contention,

---

[5] At the trial on the merits, Officer Ellis recounted the failed administration of the HGN test and the reasons for its termination. He also attempted improperly to correlate the four clues to appellant's BAC. The trial court sustained appellant's prompt objection and appellant requested no further relief. Subsequently, without objection, Officer Ellis testified that in his opinion appellant was intoxicated at the time and had lost the normal use of her mental and physical faculties. The experienced officer testified that his opinion was based on the odor of alcohol on appellant, her appearance, her swaying, her failure to follow instructions and keep her head from moving, and her confusion about the existence of the flashing red light at the intersection where the accident occurred.

19

appellant refers us only to the testimony at the hearing on the second motion to suppress evidence. Thus, appellant's contention is that the trial court erred in overruling the second motion to suppress on this basis because, as stated in his specialized objection in his suppression motion, the field sobriety test evidence did not meet the criteria of *Kelly v. State*, 824 S.W.2d at 573. And, he urges that the evidence of the one-legged stand test was inadmissible under Rule 702. Tex. R. Evid. 702.

The only police officer who testified to the administration of the one-leg stand test to appellant was Officer Clayton. After examining Officer Clayton's testimony[6] and the balance of the testimony on the one-leg stand test, we conclude the evidence related to nonscientific evidence and was admissible as lay opinion under Rule 701. Tex. R. Evid. 701. The one-leg stand test, unlike the HGN test, is a psychomotor task which tests a subject's ability to perform multiple tasks simultaneously. *See State v. Ferrer*, 23 P.3d 744, 760-62 (Haw. Ct. App. 2001). The fundamental requirement of a psychomotor field sobriety test (FST), such as the one-leg stand test, differs from

---

[6] Officer Clayton testified briefly about the administration of the one-leg stand test to appellant at the scene of the accident. Officer Clayton testified that he instructed appellant how the test was to be performed. He told her that she must stand with her feet together, both of her arms at her side, lift one leg six or eight inches off the ground, and count aloud to thirty using one-one thousand, two-one thousand, etc. Appellant was instructed not to start counting until told to do so by the officer. The test was demonstrated to appellant by the officer and she stated that she understood the procedure.

When the test began, appellant raised her leg, but put it down and asked to perform the test without her shoes. Officer Clayton agreed. Appellant started the test again, raising one leg five or six inches off the ground and "kind of swaying." When Officer Clayton noticed that appellant was not counting aloud, within two seconds he began silently counting. When he reached fifteen-one thousand, appellant placed her leg down and terminated the test. When asked, appellant declined to continue the test. This concluded Officer Clayton's testimony about the one-leg stand test. At the suppression hearing, he did not testify as to any conclusion about appellant's intoxication based on the test or otherwise.

the fundamental requirement for the admission of HGN evidence. *Id.* at 760; *State v. Meador*, 674

So. 2d 826, 831 (Fla. Dist. Ct. App. 1996). Testimony concerning the HGN test is scientific

evidence and subject to the criteria of *Kelly*, 824 S.W.2d at 573-74. *See Emerson v. State*, 880

S.W.2d 759, 763 (Tex. Crim. App. 1994).

> Because the evidence procured by the administration of psychomotor FSTs is within the common experience of the ordinary citizen, the majority of the courts that have addressed the issue generally consider psychomotor FSTs to be nonscientific evidence.

*Ferrer*, 23 P.3d at 760; *see also Cumbie v. City of Montgomery*, 703 So. 2d 423, 425 n.1 (Ala. Crim.

App. 1987); *State v. Superior Court*, 718 P.2d 171, 178 (Ariz. 1986).

The State calls our attention to *Crampton v. State*, 525 A.2d 1087 (Md. Ct. Spec.

App. 1987) holding that psychomotor FSTs are not scientific evidence but "essentially personal

observations of a police officer which determines a suspect's balance and ability to speak with

recollection." *Id.* at 1093-94.

> There is nothing 'new' or perhaps even 'scientific' about the exercise that an officer requests a suspect to perform. These sobriety tests have been approved by the National Highway Traffic Safety Administration and are *simply guidelines* for police officers to utilize in order to observe more precisely a suspect's coordination. . . . The field sobriety tests are designed to reveal objective information about a driver's coordination.

*Id.* at 1093-94 (emphasis added).

In *McRae v. State*, 152 S.W.3d 739 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd),

the defendant in a DWI case raised the same contention as that advanced here. Both parties in

*McRae* cited *United States v. Horn*, 185 F.Supp.2d 530 (D. Md. 2002) in support of their arguments.

In *McRae*, the court responded:

> The *Horn* court held that the one-leg-stand test could constitute either lay witness testimony or expert testimony, depending on how it was used at trial. *See Horn*, 185 F.Supp.2d at 556. Acknowledging that the probative value of the one-leg-stand derives from the basic nature of observing human behavior, the *Horn* court concluded that the one-leg-stand test was lay witness testimony if the officer testified only about her observations of a defendant's "appearance, coordination, mood, ability to follow instructions, balance, the presence of the smell of an alcoholic beverage . . . and the observations of the defendant's performance of the standardized field[-] sobriety tests . . . ." *Id.* at 555-56. The court further concluded, however, that an officer's otherwise lay witness testimony can become expert testimony when, among other circumstances, the officer uses terms like "standardized clues," "test," "pass," or "fail." *Id.*

> Texas, like Maryland, allows peace officers to testify as lay witnesses about their observations of a suspect's performance on the one-leg-stand test. Texas courts have held that, because an officer's testimony about a suspect's coordination, balance, and mental agility problems exhibited during the one-leg-stand test are observations grounded in common knowledge, the officer's testimony based on these observations is governed by rule 701 (lay witness opinion testimony) and not rule 702 (testimony by experts). *Compare* Tex. R. Evid. 701 *with* Tex. R. Evid. 702; *see also Emerson*, 880 S.W.2d at 763 (explaining that peace officer need not qualify as expert to express opinion whether person he observed was intoxicated). The one-leg-stand test is grounded in the common knowledge that excessive alcohol consumption can cause problems with coordination, balance, and mental agility, and its sole purpose is to reveal clues or symptoms of impairment. *See Smith v. State*, 65 S.W.3d 332, 347 (Tex. App.—Waco 2001, no pet.). Yet, it is also common knowledge that a variety of physical and environmental conditions, having nothing to do with intoxication, can also cause these symptoms. *Id.*

*McRae*, 152 S.W.3d at 745-46.

The *McRae* opinion concluded that the testimony of the arresting officer in that case concerning the one-leg stand test was lay witness testimony governed by Rule 701. 152 S.W.3d at

22

746-47; *see also Plouff v. State*, No. 14-04-00268-CR, 2006 Tex. App. LEXIS 2546, at *25 (Tex. App.—Houston [14th Dist.] March 30, 2006, no pet. h.).

Like *McRae*, we disagree with the *Horn's* statement that the officer-witness's use of terms in his testimony such as "test," "standardized clues," "pass" or "fail" converts lay testimony about the one-leg stand test into expert testimony where the witness must be qualified as an expert and the criteria of *Kelly* as to scientific evidence must be met.[7] *See Horn*, 185 F.Supp. at 559; *see also Plouff*, at 2006 Tex. App. LEXIS 2546, at *27.

We are aware of *Smith's* holding that one-leg stand test testimony can cross from lay testimony into expert testimony. 65 S.W.3d at 347. The court held that an officer's testimony that the defendant had demonstrated three out of four clues on the one-leg stand test and, therefore, that there was a 83 percent probability that the defendant was intoxicated, impermissibly giving the one-leg stand test "imprimatur" of scientific accuracy without proof that the officer's "expert" testimony was reliable as required by *Emerson*. *Id*.

Other than prohibiting a statistical correlation between the one-leg stand test and the blood alcohol concentration (BAC), Texas courts have not yet drawn a definite line between lay versus expert testimony where the one-leg stand test is involved. *See McRae*, 152 S.W.3d at 746.[8]

---

[7] In *United States v. Horn*, 185 F.Supp.2d 530 (D. Md. 2002), the court suggested that it would be preferable to refer to field sobriety tests as "procedures" rather than "tests." 185 F.Supp.2d at 559 n.48. In *State v. Meador*, 674 So. 2d 826, 832 (Fla. Dist. Ct. App. 1996) the court used the term "exercises" instead of "tests."

[8] In *Compton v. State*, 120 S.W.3d 375 (Tex. App.—Texarkana 2003, pet. ref'd), the officer failed to instruct the defendant to keep his hands to his side during the one-leg stand test. The defendant used his hands during the test to balance himself but still fared poorly on the tests. *Id.* at 379. The results of the test were admitted over objection. On appeal, the *Compton* court did not distinguish between lay and expert testimony but immediately moved to a harm analysis. *See* Tex.

We do know that a "witness may qualify to give testimony under both Rule 702 governing expert witnesses and Rule 701 permitting a lay or non-expert witness to offer opinions or inferences if the witness's testimony is based on first hand knowledge." *Harnett v. State*, 38 S.W.3d 650, 659 (Tex. App.—Austin 2000, pet. ref'd). Even with specialized training, a police officer-witness is not precluded from providing lay opinion testimony. *Osbourn v. State*, 92 S.W.3d 531, 535 (Tex. Crim. App. 2002). Rules 701 and 702 allow both expert and lay witnesses to offer opinion testimony concerning intoxication. *See Emerson*, 880 S.W.2d at 763; *Plouff*, 2006 Tex. App. LEXIS 2546, at *24.

In deciding the issue before us, we are confined to the evidence that was admitted at the time the trial court made its ruling on the second motion to suppress evidence. *See Rachal*, 917 S.W.2d at 809. We find Officer Clayton's testimony regarding the one-leg stand test to be nonscientific testimony admissible under Rule 701. It was not excludable on the basis of appellant's specialized objection in his second motion to suppress evidence. Officer Clayton did not attempt to correlate appellant's performance on the one-leg stand test to her BAC. In fact, at the suppression hearings, Officer Clayton never expressed an opinion on appellant's intoxication based on her performance on the one-leg stand test.

Appellant's expert witness, Troy Walden, testified that Clayton had failed to tell appellant to keep her legs straight during the test, but there is no showing that she did not. Walden faulted Clayton for telling appellant to raise her leg six to eight inches, that it should be

R. App. P. 44.2(b). The results of the one-leg stand test were found relatively insignificant in light of the other evidence and the error was held harmless. *Compton*, 120 S.W.3d at 379.

24

"approximately" six inches. Officer Clayton testified that appellant raised her leg five to six inches during the time. Walden criticized Officer Clayton's timing of the test which must last for thirty seconds. The evidence reflects that about fifteen to seventeen seconds into the test appellant put her foot down and terminated the test. She declined to proceed further with the testing. At a suppression hearing, the trial court is sole trier of fact and is free to accept or reject any or all of any witness's testimony. *Brooks v. State*, 76 S.W.3d 426, 430 (Tex. App.—Houston [14th Dist.] 2002, no pet.). We give almost total deference to the trial court's determination of historical facts that depend on credibility and demeanor, but renew *de novo* the application of the law to the facts. *See Guzman*, 955 S.W.2d at 89. The trial court made no findings of fact, therefore, we review the evidence in the light most favorable to the trial court's ruling. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000).

We conclude that the trial court did not err in overruling the motion to suppress evidence concerning the admission of evidence about the one-leg stand test. The third point of error is overruled.

**Exclusion of Appellant's Medical Condition**

In the fourth point of error, appellant states that the "trial court erred by excluding testimony regarding appellant's medical condition at the time of her arrest." As a result of an earlier agreement on a motion in limine, appellant's counsel interrupted appellant's direct examination at trial, and asked that the jury be removed. In the jury's absence, appellant briefly testified to her medical condition at the time of her arrest: "I have asthma, allergic respiratory disease, lupus, and I've had subcutaneous mastectomy and ten, at least, reconstructive surgeries." Appellant also

testified that she took prednisone once a day for lupus, used her albuterol inhaler once a day when home, but when "out" and exposed to cigarette smoke and other allergies she would use the inhaler more than once a day. Appellant took medicine twice a day for her allergic respiratory disease but she could not recall its name. She took neurontins twice a day for the nerve damage in her chest.

Defense counsel then requested the trial court to allow him to present this testimony to the jury to explain the conditions that the State would urge showed her intoxication. In particular, counsel called attention to the videotape (State's exhibit 1A) taken of appellant at the police station which had already been introduced into evidence. The State objected on the basis of relevancy pointing out that there was no expert medical testimony as to what effect the medicines that appellant was taking would have on a person's conduct or condition, or on a person's normal use of mental and physical faculties. The prosecutor argued that appellant, as a lay person, had not furnished that or similar information.[9] No claim was made by appellant that evidence could be produced to show

---

[9] In *Zillender v. State*, 557 S.W.2d 515 (Tex. Crim. App. 1997) the court stated:

> The generally acknowledged policies of requiring specific objections are twofold. First, a specific objection is required to inform the trial judge of the basis of the objection and afford him the opportunity to rule on it. Second, a specific objection is required to afford opposing counsel an opportunity to remove the objection or supply other testimony.

*Id.* at 517. In the instant case, the State asked for a ruling on its relevancy objection and at the same time pointed out to appellant how the objection might be removed. Appellant did not take advantage of the opportunity.

that appellant's condition at the time of her arrest was due to her health and the medicines taken. The trial court sustained the State's objection.

Relevant evidence is evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tex. R. Evid. 401. "Evidence which is not relevant is inadmissible." Tex. R. Evid. 402.

In 1 Steven Goode, Guy Wellborn, III, & M. Michael Sharlot, Texas Practice: Guide to the Texas Rules of Evidence § 401.1 (3d ed. 2002) (hereinafter Goode), the commentators wrote:

> For evidence to be relevant it must satisfy two requirements: first, materiality, and second, probativeness. The proferred evidence must be shown to be provable in the case, that is, addressed to the proof of a material proposition, i.e., "any fact that is of consequence to the determination of the action." "If the evidence is offered to help prove a proposition which is not a matter in issue, the evidence is immaterial."
>
> Once materiality has been established, Rule 401 then requires that the evidence is probative, i.e., that it tends to make the existence of that fact "more or less probable than it would be without the evidence." So, "an offered item of evidence may be excluded as 'irrelevant' for either of these two quite distinct reasons: because it is not probative of the proposition at which it is directed, or because that proposition is not provable in the case."

In the instant case, it was established by evidence from both parties and was uncontested that appellant had been at a dance club for approximately four hours, had reported that she had only one alcoholic beverage, a rum drink, was the designated driver, and was driving a Jeep motor vehicle at the time it was involved in an accident with another vehicle prior to her arrest. As appellant acknowledges, "intoxication" was the only contested issue in the case.

27

Appellant's proffered evidence was neither material nor probative, and was properly subject to the State's relevancy objection. The evidence was a self-serving, sympathy-provoking recitation of appellant's health and current medication without any showing of a link or nexus to "any fact that is of consequence to the determination of the action." Tex. R. Evid. 401.

When reviewing a trial court's determination to admit or exclude, an appellate court "must afford a trial court great discretion in its evidentiary decisions." *Montgomery v. State*, 810 S.W.2d 372, 378 (Tex. Crim. App. 1990); *Bisby v. State*, 907 S.W.2d 949, 952-53 (Tex. App.—Fort Worth 1995, pet. ref'd). The standard of review for the admission or exclusion of evidence is whether the trial court abused its discretion. *Weathered v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000); *Green v. State*, 934 S.W.2d 92, 101-02 (Tex. Crim. App. 1996); *Coffin v. State*, 885 S.W.2d 140, 149 (Tex. Crim. App. 1994).

Questions of relevance of evidence should be left largely to the trial court relying on its own observations and experience, and the relevancy ruling will not be reversed absent an abuse of discretion. *Goff v. State*, 931 S.W.2d 537, 553 (Tex. Crim. App. 1996); *Moreno v. State*, 858 S.W.2d 453, 463 (Tex. Crim. App. 1993); *Skillern v. State*, 890 S.W.2d 849, 865 (Tex. App.—Austin 1994, pet. ref'd). The test for an abuse of discretion is whether the trial court acted without reference to any guiding rules and principles, and whether the act was arbitrary and unreasonable. *Montgomery*, 810 S.W.2d at 380. We conclude that the trial court did not abuse its discretion in excluding appellant's proffered evidence on the basis of relevancy.

For the first time on appeal, appellant urges under point of error four that by excluding her proffered testimony, the trial court deprived her of a fair trial by preventing a

28

meaningful opportunity to present a defense.  In support of her due process claim, appellant cites *inter alia*, "U.S. Const. Amends. VI and XIV; Tex. Const. art. I, §§ 10, 19; *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973)."  Appellant made no trial objection to preserve this claimed error.  *See* Tex. R. App. P.33.1(a).  Even constitutional error may be waived.  *See Briggs v. State*, 789 S.W.2d 918, 924 (Tex. Crim. App. 1990).  Except for complaints involving fundamental constitutional systemic requirements [structural error], all other complaints based on a violation of both constitutional and statutory rights are waived by failure to comply with Rule 33.1.  *Ibarra v. State*, 11 S.W.3d 189, 197 (Tex. Crim. App. 1999).  Appellant failed to preserve her belated claim of error.

It is true, as appellant asserts, that the federal constitution ensures that criminal defendants will have a meaningful opportunity to present a defense.  *See Gilmore v. Taylor*, 508 U.S. 333, 343 (1993); *Crane v. Kentucky*, 476 U.S. 683, 690 (1986).  In the exercise of such right, the accused, as is required of the State, must comply with established rules of procedure and evidence designed to ensure both fairness and reliability in the ascertainment of guilt and innocence.  *Chambers*, 410 U.S. at 302.  Thus, a defendant has a fundamental right to present evidence of a defense so long as the evidence is relevant and not excluded by an established evidentiary rule.  *Miller v. State*, 36 S.W.3d 503, 507 (Tex. Crim. App. 2001).  If a federal or state rule is used to exclude what is considered favorable evidence, it does not follow that a defendant is denied a fair opportunity to present a defense.  *See United States v. Scheffer*, 523 U.S. 303, 316 (1998).  Trial courts are free to apply evidentiary rules that are not arbitrary and unjustified.  *See Potier v. State*, 68 S.W.3d 652, 667 (Tex. Crim. App. 2002).

The federal constitutional right to have a meaningful opportunity to present a defense is fundamental but is subject to limitations. The violation of such a right is not a structural error involving fundamental constitutional systemic requirements which defy analysis by harmless error standards. *See Salinas v. State*, 980 S.W.2d 219, 219 (Tex. Crim. App. 1998); *Manley v. State*, 23 S.W. 172, 175 (Tex. App.—Waco 2000, no pet.); *see also Arizona v. Fulminante*, 499 U.S. 279, 309 (1991); *Cain v. State*, 947 S.W.2d 262, 264 (Tex. Crim. App. 1997).

We conclude that appellant was not deprived of a meaningful opportunity to present a defense by the exclusion of appellant's medical testimony. The fourth point of error is overruled.

**Legal Sufficiency**

In points of error five and six, appellant challenges the legal sufficiency of the evidence to sustain the conviction. Appellant contends that the evidence is insufficient to support the conclusion that (1) she had lost the normal use of her *mental* faculties because of the introduction of alcohol into her body, or that (2) she had lost the normal use of her *physical* faculties because of the introduction of alcohol into the body.

Section 49.04(a) provides that a "person commits an offense if the person is intoxicated while operating a motor vehicle in a public place." Tex. Pen. Code Ann. § 49.04 (West 2003). Section 49.01(2) (A), (B) defines "intoxicated":

(A) not having the normal use of mental *or* physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body; or

(B) having an alcohol concentration of 0.08 or more.

Tex. Pen. Code Ann. § 49.01(2) (A), (B) (West 2003) (emphasis added).  The second definition is not applicable here.  It is clear that under the first definition the State only needs to prove beyond a reasonable doubt the loss of the normal use of mental *or* physical faculties by introduction of alcohol into the body.  The loss of the normal use of both types of faculties is not required.

In determining whether the evidence is legally sufficient to support a judgment of conviction, we view the evidence in the light most favorable to the judgment, asking whether any rational trier of fact could have found beyond a reasonable doubt all the essential elements of the offense charged.  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000).  The evidence, viewed in this light, and all reasonable inferences drawn therefrom, are evaluated in this review.  The reviewing court must consider all evidence, rightly or wrongly admitted, which the trier of fact was permitted to consider.  *See Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999); *Barnes v. State*, 62 S.W.3d 288, 298 (Tex. App.—Austin 2001, pet. ref'd).  The standard of review is the same for both direct and circumstantial evidence cases.  *Green v. State*, 840 S.W.2d 394, 401 (Tex. Crim. App. 1992).

The jury as the trier of fact is the judge of the credibility of the witnesses and the weight to be given their testimony, and may accept or reject all or any of any witness's testimony.  *See Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986).  The evidence is not rendered insufficient because the defendant presented a different version of the events.  *State v. Turro*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993).

Appellant concedes that she was operating a motor vehicle.  Without regard to fault, it is undisputed that appellant was involved in an automobile accident on a public highway.

31

Appellant urges that the only issue was intoxication. Ramona Cofield, the other driver, and three police officers all testified that in their opinions appellant was intoxicated. They testified that appellant's eyes were glassy, red, and blood shot, and that she had the smell of alcohol on her breath and swayed "a lot." When asked at the scene if she stopped her vehicle at the flashing red light, appellant responded: "What flashing red light?" Appellant did not perform well on the field sobriety tests. There was a conflict whether the field tests were properly conducted, but reconciliation of evidentiary conflicts is solely the function of the jury. *See Miranda v. State*, 813 S.W.2d 724, 733-34 (Tex. App.—San Antonio 1991, pet. ref'd). At the jail appellant refused to repeat the field sobriety tests or to take a breath test. The jailer testified she was uncooperative and refused to be fingerprinted. A jail photograph (State's exhibit five) was inculpatory as to appellant's appearance. There was also evidence of appellant's unusual behavior at the scene: she told an officer that the other driver was intoxicated and suggested that the other driver had kidnapped the child that was with the other driver.

Appellant testified that she had been at the Club Oz, a dance club, for approximately four hours and had only one alcoholic drink—a "Long Beach." She denied that she was intoxicated while operating the motor vehicle. In analyzing the challenge to the legal sufficiency of the evidence, the reviewing court does not realign, disregard, or weigh the evidence. *See Rodriguez v. State*, 939 S.W.2d 211, 218 (Tex. App.—Austin 1997, no pet.). In reviewing all the evidence in the light most favorable to the jury's verdict, we conclude that any rational trier of fact could have found all the essential elements of the offense charged including the loss of the normal use of the mental

32

or physical faculties by appellant as a result of the introduction of alcohol into the body.  The fifth and sixth points of error are overruled.

**Factual Sufficiency**

In her seventh and eighth points of error, appellant challenges the factual sufficiency of the evidence.  A factual sufficiency review begins with the presumption that the evidence supporting the judgment of conviction was *legally* sufficient.  *See Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996).  In order to determine if the evidence is factually sufficient, we must review all the evidence in a neutral light and determine whether the evidence supporting guilt is so weak that the verdict is clearly wrong and manifestly unjust or whether the evidence contrary to the verdict is so strong that the beyond a reasonable doubt burden of proof could not have been met.  *Zuniga v. State*, 144 S.W.3d 477, 484 (Tex. Crim. App. 2004).  In applying the test, we consider all the evidence, rightly or wrongly admitted.  *Camarillo v. State*, 82 S.W.3d 529, 537 (Tex. App.—Austin 2002, no pet.).  One principle of a factual sufficiency analysis is deference to the findings of the jury.  *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  Appellate courts should be on guard not to substitute their own judgment in these matters for that of the trier of fact.  *Santellan v. State*, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997), *but see Johnson*, 23 S.W.3d at 9 (a reviewing court may disagree with the result to prevent a manifest injustice).

Without reiterating the evidence, and applying the *Zuniga* holding, we find no merit in appellant's claim that the evidence is factually insufficient to support the conclusion that appellant had lost the normal use of her mental or physical faculties because of the introduction of alcohol into her body.  Appellant's seventh and eighth points of error are overruled.

**The Motion for New Trial**

After our decision on original submission, the appeal was abated, the trial court conducted a hearing on the motion for new trial and overruled the motion. Appellant has filed a supplemental brief raising an additional point of error claiming that the trial court abused its discretion in failing to grant the motion for a new trial. The State has not responded.

Appellant has divided her contention into three parts. She claims that the trial court erred in denying the motion because (1) appellant was deprived of the effective assistance of trial counsel; (2) the State asked an improper question without any basis in fact; and (3) the jury received other evidence that prejudiced her and resulted in jury misconduct.

Rule 21.2 provides: "A motion for new trial is a prerequisite to presenting a point of error prerequisite to presenting a point of error on appeal *only* when necessary to adduce facts not in the record." Tex. R. App. P. 21.2 (emphasis added).

A trial court's ruling denying a motion for new trial is reviewed under an abuse of discretion standard. *Salazar v. State*, 38 S.W.3d 141, 148 (Tex. Crim. App. 2001). The reviewing court will not substitute its judgment for that of the trial court but simply determine whether the trial court's analysis was arbitrary or unreasonable. *Lewis v. State*, 911 S.W.2d 1, 7 (Tex. Crim. App. 1995); *Ford v. State*, 129 S.W.3d 541, 547 (Tex. App.—Dallas 2003, pet. ref'd). The trial court is the sole judge of the credibility of the witnesses, including testifying jurors, and the weight to be given the evidence. If there is conflicting evidence, the trial court as trier of fact at the hearing on a motion for new trial determines the issue. *Lewis*, 911 S.W.2d at 7; *Thomas v. State*, 699 S.W.2d 845, 854 (Tex. Crim. App. 1985).

*Effective Assistance of Counsel*

Appellant claims that she was deprived of the effective assistance of trial counsel and that the trial court erred in failing to grant a new trial on that basis. She relies upon the Sixth and Fourteenth Amendments to the United States Constitution and article I, sections ten and nineteen of the Texas Constitution.

In *Strickland v. Washington*, 466 U.S. 668, 687-92 (1984), the United States Supreme Court held that in order to show ineffective assistance of counsel, a convicted defendant must show that (1) his trial counsel's performance was deficient, in that counsel made such serious errors he was not functioning effectively as counsel; and (2) the deficient performance prejudiced the defendant to such a degree that the defendant was deprived of a fair trial. *See also Ex parte Briggs*, 187 S.W.3d 458, 466 (Tex. Crim. App. 2006); *Ex parte Nailor*, 149 S.W.3d 125, 130 (Tex. Crim. App. 2004).

The two-pronged standard for testing claims of ineffective assistance of counsel set out in *Strickland* has been adopted for Texas constitutional claims. *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986). Under the *Strickland-Hernandez* standard, any allegation of ineffectiveness must be firmly founded in the record and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). We review counsel's representation in its totality rather than by isolated acts or omissions of trial counsel, and the test is applied at the time of the trial from counsel's perspective and not through hindsight. *Stafford v. State*, 813 S.W.2d 503, 506 (Tex. Crim. App. 1991); *Ex parte Welborn*, 785 S.W.2d 391, 393 (Tex. Crim. App. 1990). We indulge a strong presumption that counsel's acts or

omissions were reasonable and part of a sound trial strategy, and it is the defendant's burden to overcome that presumption by a preponderance of the evidence. *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). Our review is highly deferential to counsel, and we will not speculate about trial counsel's strategy. *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002); *Mayhue v. State*, 969 S.W.2d 503, 511 (Tex. App.—Austin 1998, no pet.).

The defendant may prevail by providing a record that affirmatively demonstrates that counsel's performance was not based on sound trial strategy. *Mallet v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001). Without an evidentiary hearing on the issue, the defendant's burden is difficult to meet. *Nailor*, 149 S.W.3d at 130-31; *Blevins v. State*, 18 S.W.3d 266, 271-72 (Tex. App.—Austin 2000, no pet.). If the appellate record is silent regarding the reasons for counsel's conduct, as it is in many cases, then it is insufficient to overcome the presumption that counsel followed a legitimate strategy. *Tong v. State*, 25 S.W.3d 707, 714 (Tex. Crim. App. 2000); *Thompson*, 9 S.W.3d at 813-14.

In her motion for new trial, appellant claimed that she was denied the effective assistance of counsel because exculpatory evidence was either excluded or not offered. Attached to the motion were the affidavits of Nicole Rudacille and Shannon Broach, who were with appellant at the Club Oz and at the time of the automobile accident, but who did not testify at the trial.

At the hearing on the motion, appellant called her trial attorney and Rudacille as witnesses and offered the affidavit of Broach, who was unavailable, into evidence to support the ineffective assistance of counsel claim. The motion was overruled.

In her brief, appellant divides her ineffective assistance claim into three parts. We shall first consider her claim that trial counsel failed to call exculpatory witnesses or introduce the jail videotape. A claim of ineffective assistance of counsel must be proved by a preponderance of the evidence. *Rylander v. State*, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003); *Bone v. State*, 77 S.W.3d at 833; *Hale v. State*, 140 S.W.3d 381, 391 (Tex. App.—Fort Worth 2004, pet. ref'd). The record must affirmatively demonstrate the alleged ineffectiveness. *Thompson*, 9 S.W.3d at 813; *In re I.R.*, 124 S.W.3d 294, 298-99 (Tex. App.—El Paso 2003, no pet.). For example, the failure to call a witness does not amount to ineffective assistance unless the record shows that the witness was available and would have provided testimony beneficial to the defendant. *Butler v. State*, 716 S.W.2d 48, 55 (Tex. Crim. App. 1986). This is the general rule. *Cate v. State*, 124 S.W.3d 922, 927 (Tex. App.—Amarillo 2004, pet. ref'd); *Parmer v. State*, 38 S.W.3d 661, 668 (Tex. App.—Austin 2000, pet. ref'd). Moreover, when the record is silent as to the motivations underlying counsel's decisions, the defendant usually cannot overcome the strong presumption that counsel's conduct was reasonable. *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001); *Thompson*, 9 S.W.3d at 813. The decision whether to present witnesses is largely a matter of trial strategy. *Gaston v. State*, 136 S.W.3d 315, 322 (Tex. App.—Houston [1st Dist.] 2004, pet. struck) (en banc).

The "exculpatory witnesses" to which appellant makes reference appear to be Rudacille and Broach. There was no showing that they were available at the time of the trial. Rudacille testified at the hearing but her whereabouts on the trial date was not established. Rudacille related that she was with appellant ("my mom") and Broach at the Club Oz for three hours or so on the evening of May 20, 2002. She had three or four drinks during the evening, was at the bar, in the

restroom, and was not always with appellant. Rudacille did not know how many drinks appellant had. Both parties erroneously inquired about her post-trial affidavit of May 15, 2003, stating that appellant had only one drink. This affidavit in the record does not show Rudacille made such a statement but was consistent with her testimony that she did not know how many drinks appellant had. The interrogation appeared confusing to Rudacille, who testified that it had been almost three years since the incident and she did not recall how many drinks appellant may have had on the night in question.

Rudacille testified that appellant did not appear "off kilter" and was not intoxicated at the time. Despite this latter testimony, Rudacille's testimony tended to undermine appellant's "designated driver and one drink all evening" theory. This was not favorable testimony. Rudacille was not asked about her availability as a witness, any contact she had with appellant's counsel, or why she did not testify at trial.

At the hearing, appellant's appellate counsel told the court that he did not know where Broach was; that the information he had was that Broach was in Oklahoma; and that he thought that with enough time he could "track her down" and have her available for the next trial. Counsel then introduced Broach's affidavit of May 15, 2003. *See* Tex. R. App. P. 21.7. Broach's affidavit reflected that on May 20, 2002, she was with appellant and Rudacille "around 7 or 8 . . . for a few hours"; that she knew appellant had one beverage (unidentified); and that she "had a coke and water while there." Broach swore that appellant did not appear intoxicated to her and that she would not have gotten into the vehicle if she thought there was any danger because a friend's siblings had been

38

killed in a drunk driving accident. Broach's affidavit did not touch on her availability as a witness at the time of trial.

Broach's affidavit was generally supportive of appellant's theory of the case, but it opened up the possible scenario of the prosecution exploring why appellant, the oldest individual in the group, would encourage Broach, her employee, who was legally underaged for purchasing, possessing or consuming alcoholic beverages, to spend four hours in a bar and dance club. Broach's affidavit that she only had *a* "coke and water" in the four-hour period was strikingly similar to appellant's "one drink only" testimony and could have affected the credibility of both in the eyes of the jury. Broach's affidavit makes no mention of any contact with appellant's trial counsel nor explains why she did not testify at trial.

Appellant's trial counsel testified that he spoke with one of the two witnesses, possibly Broach. He was not asked why he had not called Rudacille and Broach as witnesses. The record is silent as to trial counsel's motivations underlying his decisions. *Mallett*, 65 S.W.3d at 63. In light of the record, we cannot say appellant has sustained her burden of showing ineffective assistance on the basis of failure to call Rudacille and Broach as witnesses.[10]

---

[10] The parties have not called the following matters to our attention. At the conclusion of the first suppression hearing, the prosecutor noted the presence of Broach and asked to have her sworn and instructed by the trial court to be present at trial. The trial court told the prosecutor to first have her subpoenaed as a witness. On July 10, 2003, the State asked that subpoenas be issued for Broach and Nicole Zielinski (as Rudacille was known to the State). The record does not reflect that the subpoenas were issued or executed. Appellant's trial counsel may have been aware of the State's efforts to secure these witnesses.

During the trial on the merits and the cross-examination of Officer Ellis, appellant's trial counsel, in the absence of the jury, unsuccessfully tried to offer into evidence a taped post-arrest and pretrial telephone conversation between appellant and Officer Ellis. At one point, appellant told

*The "Jail Videotape"*

Appellant also claims that trial counsel provided ineffective assistance of counsel by not introducing the "jail videotape." The motion for new trial in a conclusory manner urges that "extensive exculpatory evidence was either excluded or not offered" but no mention is made of a "jail videotape."

In her only argument in her brief, appellant asserts:

> The jury also saw appellant after her arrest being asked to submit to a breath-test. (State's exhibit 1-A). The jury did not see what occurred after appellant refused that test. While there is no audio, there is a videotape recording all her behavior and movements afterward in the jail. She walks and moves just as an ordinary person would do. This video footage is further evidence that she was not intoxicated.

There appears to have been three videotapes. The record is not clear that appellant's trial counsel knew of or had access to the "jail videotape." As a witness at the new trial hearing, he was not asked why he did not introduce it into evidence. The record is here again silent as to the motivations underlying his decision not to use the videotape. *Mallett*, 65 S.W.3d at 63. We do not speculate about trial counsel's strategy. *Blevins*, 18 S.W.3d at 271. We conclude that appellant failed to sustain her burden of showing ineffective assistance of counsel on the basis that the "jail videotape" was not offered by trial counsel.

In another ineffective assistance claim, appellant complains that her trial counsel failed to introduce independent evidence that appellant sought a blood test to prove her innocence.

---

Officer Ellis that Shannon Broach "only had water to drink, so she certainly had a clear head." Officer Ellis responded: "If she only had water, somebody must have poured a lot of beer on her."

Appellant's general conclusory allegations in the motion for new trial did not specifically point out this claimed deficit so as to give reasonable notice to the trial court and the State as to the matters under attack. *See Flores v. State*, 18 S.W.3d 796, 799 (Tex. App.—Austin 2000, no pet.).

Appellant did testify at trial that, after talking to an attorney on the telephone from jail, she asked for a blood test which was not given. Jailer Maurice Jones testified that it was possible that appellant requested a blood test. Appellant argues that the jury had little else except her word that she actively pursued preservation of evidence to show she was not intoxicated,[11] and that there was other evidence. At the hearing on the new trial motion, appellant's trial counsel, as a witness, was shown what was claimed to be Officer Clayton's arrest report which reflected that immediately upon the EMS's arrival (apparently at the scene of the accident), appellant asked the EMS personnel for a blood test to prove she was not intoxicated. Appellant's trial counsel admitted "that" was at least a part of the arrest or offense report. Trial counsel could not recall whether he had interrogated Officer Clayton about this matter. Appellant's appellate counsel then moved on to other matters in his interrogation at the hearing. No reason is given as to why appellant could not testify to her own actions.

The record is silent as to why trial counsel did not question Officer Clayton about this matter. As noted, we do not speculate about trial strategy. Without some explanation of trial counsel's acts or omissions, we presume that trial counsel's conduct fell within the wide range of

---

[11] As to preservation of evidence, appellant makes no reference in argument to her refusal to take a breath test or further perform field sobriety tests.

reasonable professional assistance. *Strickland*, 466 U.S. at 689. Appellant has not overcome that presumption.

In still another ineffective assistance claim, appellant urges that her trial counsel's trial strategy was objectively unreasonable. Here again, there is no specification of this claim set forth in the motion for new trial as to give reasonable notice to the trial court and the State as to the matters under attack. *See Flores*, 18 S.W.3d at 799. The motion does not set forth grounds showing that appellant was entitled to relief. *Id.*

The narrow basis for appellant's broad-based claim is that trial counsel's lack of knowledge of a change in the law was a "large factor" in appellant's decision to testify at her trial. Appellant's trial counsel filed a motion to exclude the videotape in which appellant invoked her right to counsel citing *Hardie v. State*, 807 S.W.2d 319, 322 (Tex. Crim. App. 1991), in which it was held that evidence of a post-*Miranda* warnings request for counsel is inadmissible. Trial counsel testified at the hearing on the new trial motion that he was surprised when the trial court admitted the videotape. Counsel acknowledged that he was unaware of the decision in *Griffith v. State*, 55 S.W.3d 598 (Tex. Crim. App. 2001), holding that pre-*Miranda* warnings requests for counsel are admissible and can be considered as substantial evidence of guilt because the invocation is not produced by custodial interrogation and the individual is not yet officially charged. *Id.* at 602-08. In this situation, there is no violation of either the Fifth or Sixth Amendments to the United States Constitution. *Id.*

In the instant case, appellant's request for counsel on the videotape came prior to any *Miranda* warnings being given and at the time of her refusal to take the breath test.

42

Even if the law had been different and favorable to appellant, trial counsel could have excluded only that part of the tape where appellant invoked her right to counsel, not the remainder of the videotape. At the hearing on the new trial motion, trial counsel did say that the admission of the videotape was a "large factor" in the decision for appellant to take the witness stand. He did not explain why this was true nor was he asked. On direct and cross-examination, counsel testified that he and appellant discussed her decision to testify prior to trial but it was a "game time" decision. Counsel stated that he explained the pros and cons of the decision to appellant and how it might affect the case, but the decision was personally made by appellant. The record is silent as to how counsel's unawareness of the *Griffith* opinion rendered his overall trial strategy objectively unreasonable. A defense counsel must have a firm command of the facts as well as governing law. *Ex parte Welborn*, 785 S.W.2d 391, 393 (Tex. Crim. App. 1990). However, the *Strickland* two-pronged test is to be judged by the "totality of the representation" rather than by isolated acts or omissions of trial counsel, and the test is applied at the time of the trial, not through hindsight. *Welborn*, 785 S.W.2d at 393. The *Strickland* standard has never been interpreted to mean errorless or perfect counsel. *Bridge v. State*, 726 S.W.3d 558, 571 (Tex. Crim. App. 1986). The fact that another attorney might have pursued a different course of action at trial does not support a finding of ineffectiveness. *Blott v. State*, 588 S.W.2d 588, 592 (Tex. Crim. App. 1979); *Josey v. State*, 97 S.W.3d 687, 696 (Tex. App.—Texarkana 2003, no pet.); *Banks v. State*, 819 S.W.2d 676, 681 (Tex. App.—San Antonio 1991, pet. ref'd).

Unless a defendant makes a showing of both prongs of the *Strickland* test, it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the

results unreliable. *Strickland*, 466 U.S. at 687; *Oestrick v. State*, 939 S.W.2d 232, 237 (Tex. App.—Austin 1997, pet. ref'd). Here, appellant has failed to show that her trial counsel's trial strategy was objectively unreasonable and therefore did not meet the two-pronged test of *Strickland*. The trial court did not abuse its discretion in overruling the motion for new trial on the basis of ineffective assistance of counsel.

*Receipt of Other Evidence*

Appellant next contends that the trial court abused its discretion in denying the motion for new trial because the jury received other evidence that prejudiced her. The motion for new trial did not allege jury misconduct in any form, much less the receipt of other evidence, nor was there a supporting affidavit. A motion for new trial alleging facts outside the record filed without supporting affidavits is not a proper pleading. *Dugard v. State*, 688 S.W.2d 524, 530 (Tex. Crim. App. 1985), *overruled on other grounds*, *by Williams v. State*, 780 S.W.2d 802, 803 (Tex. Crim. App. 1989); *Flores v. State*, 18 S.W.3d 796, 798 (Tex. App.—Austin 2000, no pet.). A trial court does not abuse its discretion in refusing to grant a new trial without proper pleading. *Flores*, 18 S.W.3d at 798.

Unlike repealed article 756 of the 1925 Code of Criminal Procedure, the current Rules of Appellate Procedure and 1966 Code of Criminal Procedure do not require that a motion for new trial be in writing and specify its contents. *See* 43A George E. Dix & Robert O. Dawson, Texas Practice: Criminal Practice and Procedure § 41.22 (2d ed. 2001). Despite the omission, the Texas Court of Criminal Appeals has held that the requirement persists and a motion for new trial must distinctly set forth each ground. *Id.* (citing *Trout v. State*, 702 S.W.2d 618, 620 (Tex. Crim. App.

1985)) (holding that if instance of alleged jury misconduct is not properly presented by motion for new trial, it should not be entertained by trial court at hearing on motion and is not properly preserved for appeal), *see also Harvey v. State*, 201 S.W.2d 42, 45 (Tex. Crim. App. 1947) (holding that in alleging jury misconduct, motion for new trial must give reasonable notice not only to trial court but to State as to misconduct relied upon).

In *Cuellar v. State*, 943 S.W.2d 487 (Tex. App.—Corpus Christi 1996, pet. ref'd), the court stated:

> In order for a particular instance of juror misconduct to be properly before the court, that instance of jury misconduct must be included in the motion for new trial, which must also be accompanied by an affidavit of a juror "or" some other person in position to know the facts, or else include some reason or excuse for why such affidavit is omitted. *See Trout*, 702 S.W.2d at 620, and *Stephenson v. State*, 494 S.W.2d 900, 908 (Tex. Crim. App. 1973). This general rule serves the dual purpose of discouraging "fishing expeditions" in the hopes of impeaching a jury verdict, as well as providing reasonable notice to both the trial court and the State as to the specific instances of misconduct alleged. *Trout*, 702 S.W.2d at 620; *Stephenson*, 494 S.W.2d at 908.

*Id.* at 491. In absence of the general rule it would be difficult for the State to controvert "in writing" the allegations in the motion for a new trial as permitted. *See* Tex. R. App. P.21.5.

In the instant motion for new trial there were no allegations concerning the receipt of other evidence by the jury or any other type of jury misconduct. Nevertheless, appellant called Maruisa Hines, a juror, as a witness at the hearing. Hines was asked if there had been a discussion during jury deliberations about a "Long Island Ice Tea" drink. Hines explained that it was "mentioned and 90 percent of us did not understand what it was." A lady juror who was a bartender

told the others that the drink contained three or four alcoholic beverages with orange or grapefruit juice and soda. She did not know the types of alcoholic beverages used.

At this point the prosecutor objected that this matter was not alleged in the new trial motion. The objection was overruled. The trial court told the prosecutor to raise the matter on appeal if there was one. Hines was then asked if the explanation showed that the "Long Island Ice Tea" was "a pretty heavy-duty drink." He replied: "It was what I'd call a butt-kicker."[11] Hines then affirmatively stated that he thought "that" was persuasive to the jury and himself in returning a guilty verdict.

Appellant relies upon Rule 21.3(f), claiming that a new trial must be granted because "after retiring to deliberate, 'the jury has received other evidence.'" Tex. R. App. P.21.3(f). To show jury misconduct the defendant must show that (1) the other evidence was actually received by the jury; and (2) it was detrimental. *Garza v. State*, 630 S.W.2d 272, 274 (Tex. Crim. App. 1981); *Stephenson v. State*, 571 S.W.2d 174, 176 (Tex. Crim. App. 1978); *Ford*, 129 S.W.3d at 548; *Escobedo v. State*, 6 S.W.3d 1, 8 (Tex. App.—San Antonio 1999, pet. ref'd). Whether the jury has "received" other evidence is a fact question to be decided by the trial court. *Escobedo*, 6 S.W.3d at 8.

A new trial is not required every time a juror mentions something that is not supported by the evidence adduced at trial. *Stephenson*, 571 S.W.2d at 176. A passing remark will not constitute the receipt of other evidence. *Ford*, 129 S.W.3d at 548; *Escobedo*, 6 S.W.3d at 9;

---

[11] Juror Hines's answer was his subjective view of a "Long Island Ice Tea" drink as described. There was no showing that Hines expressed his opinion to the other jurors or that they reached the same conclusion.

*Saenz v. State*, 976 S.W.2d 314, 322 (Tex. App.—Corpus Christi 1995, no pet.); *Bratcher v. State*, 771 S.W.2d 175, 189 (Tex. App.—San Antonio 1989, no pet.). In order to determine whether evidence was "received," we look to the context in which it was mentioned and the extent to which the jurors discussed it. *Geaona v. State*, 733 S.W.2d 611, 619 (Tex. App.—Corpus Christi 1987, pet. ref'd).

Here Hines was the only juror to testify. He said the particular drink was "mentioned" and a juror-bartender briefly explained what it contained without knowing what alcohol beverages were actually used. This information was essentially the same as the prosecutor suggested but did not prove in his cross-examination of appellant. There was no evidence showing that appellant drank a "Long Island Ice Tea." The extent of the juror's discussion about the matter was not shown. It appears the jurors were curious about the drink and the juror-bartender's statement was a passing remark and does not reflect the receipt of other evidence in violation of Rule 21.3(f).

Hines did briefly testify that the remarks were "persuasive" with regard to the guilty verdict. This was inadmissible evidence. Rule 606(b) prohibits a juror from testifying, either in person or by affidavit, "as to any matter or statement occurring during the jury's deliberations." Tex. R. Evid. 606(b). The only exceptions are that "a juror may testify: (1) whether any outside influence was improperly brought to bear upon any juror; or (2) to rebut a claim that the juror was not qualified to serve." *Id.* Neither exception is here applicable. The rules contemplate that an outside influence originate from sources other than the jurors themselves. *Ford*, 129 S.W.3d at 550; *see also Tinker v. State*, 148 S.W.3d 666, 673 (Tex. App.—Houston [14th Dist.] 2004, no pet.).

There were no allegations of jury misconduct in the motion for new trial nor was there a supporting affidavit or other verification. The pleadings were insufficient[12] and the matter of jury misconduct should not have been entertained by the trial court. Moreover, the evidence offered over the State's objection did not show jury misconduct for the reasons stated above. The trial court did not abuse its discretion in overruling the motion for a new trial on the basis of jury misconduct.

*Improper Trial Question*

In her third claim that the trial court erred in denying the motion for new trial, appellant urges that she was prejudiced by an improper trial question asked by the State without any basis in fact. Appellant fails to identify which question was improper but refers this Court, as she did the trial court, to two pages of her cross-examination at trial. This interrogation was a part of the record, but apparently appellant sought to establish a lack of basis for the interrogation at the hearing on the motion for new trial.

At the outset, the difficulty observed is that there are no allegations in the motion for new trial that an improper question was asked and neither the trial court nor the State were given reasonable notice about this matter being under attack. The motion for new trial was a deficient pleading in this regard. The trial court need not have considered the matter. *Cuellar v. State*, 943 S.W.2d 487, 491 (Tex. App.—Corpus Christi 1996, pet. ref'd). We will explain how this contention arose at the hearing on new trial motion.

---

[12] Appellant's pleading in the motion for new trial: "And for such other reasons that may appear on the hearing on this motion" is insufficient itself and does not constitute a jury misconduct allegation.

48

At trial, the arresting officer Charles Clayton testified that appellant told him that she only had one drink, "a Long Beach." A videotape (State's exhibit 1A) also revealed appellant stating that she had "a Long Beach." On direct examination, appellant corroborated this evidence. On cross-examination, appellant explained that a "Long Beach" consisted of Sprite [soda], orange juice, and one shot of Bacardi [rum]. Over a relevancy objection, the prosecutor asked appellant if she knew what a "Long Island Ice Tea" drink was. Appellant had heard of the drink but did not know its contents. Appellant denied that a "Long Beach" and a "Long Island Ice Tea" were the same drink with four ounces of liquor. Appellant stated that she could not drink "that." This interrogation continued without objection. Appellant insisted that she only had a "Long Beach" and could not answer the hypothetical question about a "Long Island Ice Tea." The interrogation concluded without the prosecutor establishing his suggestion.

After juror Hines had testified at the hearing, appellant's appellate counsel called the trial court's attention to the specific pages of appellant's cross-examination at trial. Counsel then asked to call the prosecutor to show a lack of basis in fact for the cross-examination about the "Long Island Ice Tea" drink. Without testifying, the prosecutor acknowledged that the basis for the cross-examination was the supplemental report of Officer Clayton. This report introduced at the hearing stated that appellant told Officer Clayton that she had a "Long Island Ice Tea" drink which the officer understood to contain six different shots of hard liquor. Although this report was contrary to Officer Clayton's sworn testimony at trial, the matter was not further pursued at the new trial hearing.

In argument at the conclusion of the hearing, appellant's counsel made a brief reference to the matter but made no claim that the prosecutor acted in bad faith. This basis for a new

trial was not alleged in the motion for new trial developed at the hearing to the extent described, and not pursued as a separate and independent ground for a new trial until now.

Appellant cites *Gailey v. State*, 671 S.W.2d 123 (Tex. App.—Houston [1st Dist.] 1984 pet. ref'd), which involved the denial of a mistrial motion, and which is distinguishable from the instant case by the facts, procedure, and the law.  Given the circumstances presented, the trial court did not abuse its discretion in overruling the motion for new trial on the basis of the asking of an improper question.  The supplemental point of error is overruled.

Having overruled all of appellant's points following remand, we will affirm the judgment of the court.

_____

John F. Onion, Jr., Justice

Before Chief Justice Law, Justices Puryear and Onion[*]

Affirmed

Filed:   June 16, 2006

Do Not Publish

[*]  Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by assignment.  *See* Tex. Gov't Code Ann. § 74.003(b) (West 1998).